Ordinarily, the Operations Lieutenant makes the decision to release an inmate or apply lesser restraints.  This authority must not be delegated below the Lieutenant level.  If the Lieutenant needs to consult with mental health staff before making the decision on whether to release an inmate from restraints, it will be sought without delay.

**[f.  When the inmate is placed in four-point restraints, qualified health personnel shall initially assess the inmate to ensure appropriate breathing and response (physical or verbal). Staff shall also ensure that the restraints have not restricted or impaired the inmate's circulation.  When inmates are so restrained, qualified health personnel ordinarily are to visit the inmate at least twice during each eight-hour shift.  Use of four-point restraints beyond eight hours requires the supervision of qualified health personnel.  Mental health and qualified health personnel may be asked for advice regarding the appropriate time for removal of the restraints.]**

Health Services staff, perform initial and subsequent required checks, must examine and document the following:

- Date and time of examination;
- Examining staff member;
- Body position;
- Restraints (adequate circulation);
- Vital signs (blood pressure, pulse, respiration, and temperature);
- Medication;
- Injuries;
- The inmate's intake, output, hydration, etc.;
- Possible medical reasons for behavior;
- Deterioration of inmate's health; and
- Any other significant findings and comments.

In institutions without 24-hour medical coverage, medical staff must report to the institution twice during each eight-hour shift that an inmate remains in four-point restraints.  Such staff will be compensated (overtime, compensatory hire, etc.) in accordance with the regulations.  Under no circumstances will non-medical staff perform a medical assessment of an inmate.

Psychology Services staff will examine inmates in four-point restraints at least once during every 24 hour period that the inmate is restrained.  Psychology staff examinations will include the following:

(1)  A review of the inmate's psychological history;

**Exhibit 1
Attach. H, p. 15**

P5566.06, CN-1
8/29/2014
Page 15

(2)   A description of the interview conducted with the
      inmate;
(3)   A review of the 15 minute, two-hour, and health
      services review logs;
(4)   A description of the inmate's current mental health
      status;
(5)   Recommendations; and
(6)   Whether the inmate is being referred for mental health
      institution placement and an explanation.

See Section 14.b., **Use of Restraints Reporting Requirements,**
for detailed information on documenting Health and Psychology
Services Staff reviews.

**[g.   When it is necessary to restrain an inmate for longer than
eight hours, the Warden (or designee) or institution
administrative duty officer shall notify the Regional Director or
Regional Duty Officer by telephone.]**

The above notification will be made for each consecutive eight-
hour period the inmate remains in restraints.  Documentation
detailing the reasons for the placement of each inmate in
four-point restraints, regardless of the duration, must be
provided to the Regional Director or Regional Duty Officer on the
following work day.

Additionally, within 24 hours of placement in restraints, a
review of the inmate's status will be conducted and a behavior
management plan prepared.  The Warden, Associate Warden, Captain,
Unit Manager, Health Services Administrator, and Chief
Psychologist will conduct this review.  All relevant information
will be reviewed, including the 15-minute, Lieutenant, medical
staff, and psychology service checks logs.

Evidence indicating the inmate's inability to be placed in
lesser restraints or released from restraints must support the
Warden's decision to continue restraints beyond the initial 24
hour period.  In making this decision, the Warden should look for
a pattern of non-disruptive behavior over a period time
indicating the inmate has regained self-control and is no longer
a disruptive threat.

Additionally, the Warden's documentation must indicate
specifically what considerations are being made for mental health
treatment, including possible referral to a mental health
institution.

**Exhibit 1**
**Attach. H, p. 16**

The Warden's review should be documented in memorandum format to the file, with a copy faxed to the Regional Director immediately upon completion.  The memorandum should summarize the reports of each participant, followed by the Warden's decision and justification.  Group reviews of this type must be conducted within every 48-hour period following the initial 24-hour review. See Section 14.b., Use of Restraints Reporting Requirements, for detailed information on documenting the initial 24-hour, and subsequent 48-hour, reviews.

11.  [USE OF CHEMICAL AGENTS OR NON-LETHAL WEAPONS §552.25.  The Warden may authorize the use of chemical agents or non-lethal weapons only when the situation is such that the inmate:

  a.  Is armed and/or barricaded; or,

  b.  Cannot be approached without danger to self or others; and,

  c.  It is determined that a delay in bringing the situation under control would constitute a serious hazard to the inmate or others, or would result in a major disturbance or serious property damage.]

  Qualified health personnel (Physician, Physician's Assistant, or nurse) shall be consulted prior to staff using chemical agents unless the circumstances require an immediate response. Ordinarily, in a calculated use of force situation, the inmate's medical file must be reviewed by these personnel to determine whether the inmate has any diseases or conditions which would be dangerously affected if chemical agents or non-lethal weapons are used.  This includes, but is not limited to: asthma, emphysema, bronchitis, tuberculosis, obstructive pulmonary disease, angina pectoris, cardiac myopathy, or congestive heart failure.  Local procedures will be developed where 24 hour medical coverage is unavailable.

12.  [MEDICAL ATTENTION IN USE OF FORCE AND APPLICATION OF RESTRAINTS INCIDENTS §552.26

  a.  In immediate use of force situations, staff shall seek the assistance of mental health or qualified health personnel upon gaining physical control of the inmate.  When possible, staff shall seek such assistance at the onset of the violent behavior. In calculated use of force situations, the use of force team leader shall seek the guidance of qualified health personnel(based on a review of the inmate's medical record) to identify physical or mental problems.  When mental health staff

Exhibit 1
Attach. H, p. 17

or qualified health personnel determine that an inmate requires
continuing care, and particularly when the inmate to be
restrained is pregnant, the deciding staff shall assume
responsibility for the inmate's care, to include possible
admission to the institution hospital, or, in the case of a
pregnant inmate, restraining her in other than face down
four-point restraints.

   b.   After any use of force or forcible application of
restraints, the inmate shall be examined by qualified health
personnel, and any injuries noted, immediately treated.]

   If any staff involved in a use of force reports an injury,
Health Services personnel should provide an immediate examination
and initial emergency treatment as required.  Staff may also seek
treatment from their personal physician.

13.   **USE OF FORCE IN SPECIAL CIRCUMSTANCES.**  In certain
extenuating circumstances, and after confrontation avoidance has
failed or has proven to be impractical, staff may be forced to
make a decision, such as whether to use force on a pregnant
inmate or an aggressive inmate with open cuts, sores, or lesions.

Special cases such as mentally ill, disabled, or pregnant
inmates, after consultation with the Clinical Director, must be
assessed carefully to determine whether the situation is grave
enough to require the use of physical force.

   a.   **Pregnant Inmates.**  When pregnant inmates have to be
restrained, necessary precautions must be taken to ensure the
fetus is unharmed.  Health Services personnel must prescribe the
necessary precautions, including decisions about the manner in
which the inmate is to be restrained, i.e., whether medical
personnel should be present during the application of restraints,
whether the inmate should be restrained at the institutional
hospital or a local medical facility, etc.

   b.   **Inmates with Wounds or Cuts.**  Aggressive inmates with open
cuts or wounds who have attempted to harm themselves or others
should be carefully approached by staff in the prescribed
protective clothing/gear.  A full body shield should also be used
during these encounters to protect staff.  Aggressive inmates,
after placement in restraints, should be placed in administrative
detention and separated from other inmates.

Exhibit 1
Attach. H, p. 18

Ordinarily, inmates of this status must remain in administrative detention until cleared to return to the general population by the Captain, Chief Psychologist, and the Clinical Director with the Warden's approval.

14. **[DOCUMENTATION OF USE OF FORCE AND APPLICATION OF RESTRAINTS INCIDENTS** §552.27. **Staff shall appropriately document all incidents involving the use of force, chemical agents, or non-lethal weapons. Staff shall also document, in writing, the use of restraints on an inmate who becomes violent or displays signs of imminent violence. A copy of the report shall be placed in the inmate's central file.]**

a. **Report of Incident.** A Use of Force Report (BP-E583) will be prepared on the use of force, chemical agents/pepper mace, progressive restraints, and non-lethal weapons. This reporting requirement includes the application of progressive restraints on an inmate who complies with the placement of the restraints.

The report must establish the identity of all involved in the incident; inmates, staff, and others. It must provide a vivid, detailed description of the incident. The report, including mental health/medical reports must be submitted to the Warden or designee no later than the end of the tour of duty. A copy of the report is to be placed in the inmate's central file. Copies are also to be sent within two work days to:

    (1)  Assistant Director, Correctional Programs Division;
    (2)  Assistant Director, Health Services Division;
    (3)  Central Office Correctional Services Administrator;
    (4)  Regional Director; and,
    (5)  Regional Correctional Services Administrator.

A report is not necessary for the general use of restraints (for example, the routine movement or transfer of inmates).

b. **Use of Restraints Reporting Requirements**

**Documented Reviews.** The following reviews will be documented as indicated:

(a) Fifteen-minute check - **fifteen-Minute Restraints Check Form (24 Hours)** (BP-S0717.055);

(b) Two-hour Lieutenant check - **Two-Hour Lieutenant Restraints Check Form (24 Hours)** (BP-S0718.055);

**Exhibit 1**
**Attach. H, p. 19**

P5566.06, CN-1
8/29/2014
Page 19

    (c) Health Services Staff Review  - **Health Services
Restraint Review Form (24 Hours)** (BP-S0719.055); and

    (d) Psychology Staff Check  - **Psychology Services
Restraint Review Form (24 Hours)** (BP-S0720.055).

    Staff must complete all forms until the inmate is released
from restraints.  The forms will be submitted to the Warden as
required for periodic reviews of an inmate's placement in
restraints.  After release from restraints, these forms must be
compiled and maintained in the Inmate's Central File and Special
Investigative Supervisor's file.

    c.  **Videotape of Use of Force Incidents.**  Staff must obtain a
video camera immediately and record any use of force incident,
unless it is determined that a delay in resolving the situation
would endanger the inmate, staff, or others, or would result in a
major disturbance or serious property damage.

    The video recording will also include any medical examination
conducted after:

- the application of restraints,
- use of chemical agents,
- use of pepper mace, and/or
- use of non-lethal weapons.

    Calculated use of force shall be videotaped following the
sequential guidelines presented in the Correctional Services
Manual.  The original videotape must be maintained and secured as
evidence in the SIS Office.  A copy of every videotape, after
review by the Warden (within four work days of the incident),
unless requested sooner by the Regional Director, will be
provided immediately to the Regional Director for review.

    The Regional Director shall forward videotapes of questionable
or inappropriate cases immediately to the Assistant Director,
Correctional Programs Division, Central Office, for review.

    When a threat to the safety of the inmate, staff or others, or
property, requires an immediate response, staff are obligated to
obtain a camera and begin recording the event as soon as
feasible.  As soon as control of the situation has been obtained
staff must record information on:

- injuries;

**Exhibit 1
Attach. H, p. 20**

- circumstances that required the need for immediate use of force; and
- identifications of the inmates, staff, and others involved.

   d. **Documentation Maintenance.**  The Captain must maintain all documentation, including the videotape and the original BP-E583, for a minimum of 2½ years.  A separate file must be established on each use of force incident.

15.  **AFTER-ACTION REVIEW OF USE OF FORCE AND APPLICATION OF RESTRAINTS INCIDENTS.**  Following any incident involving the use of force (calculated or immediate) and the application of restraints, the Warden, Associate Warden (responsible for Correctional Services), Health Services Administrator, and Captain must meet and review the incident.  The review is conducted to assess the rationale of the actions taken (e.g., if the force was appropriate and in proportion to the inmate's actions).

The review team should gather relevant information to determine if policy was adhered, and complete the standard After-Action Report (BP-E586), indicating the nature of the review and findings.  The BP-E586 should be submitted within two working days after the inmate is released from restraints.

   a. **Videotape Review.**  The After-Action Review Team should review the actions of the staff for compliance with the Correctional Services Manual and this policy.  At a minimum, this review should include the following:

- The Lieutenant displayed professional behavior during the Forced Cell Team technique.

- The Lieutenant ensured only the force necessary to control the inmate is used, based on the nature of the incident.

- The Lieutenant monitored the actions of the inmate and team members; and was not involved in subduing the inmate unless it is deemed necessary to prevent staff or inmate injury.

- The Use of Force Team members were wearing the proper protective gear.

- Unauthorized items such as towels, tape, surgical mask, hosiery, etc., was not being used.

**Exhibit 1
Attach. H, p. 21**

P5566.06, CN-1
8/29/2014
Page 21

- Introductions were made by the Lieutenant, Use if Force Team members, medical staff, and staff involved in the confrontation avoidance technique as well as identifying all staff present, including those observing.

- Use of Force Team members used sound correctional judgment to ensure unnecessary pressure is not applied to the inmate.

- Use of Force Team members used only the amount of force necessary to gain control of the inmate.

- Inabilities to effectively gain control of the inmate are assessed and may indicate that additional training is necessary.

- There was continuous operation of the video and breaks were documented and appropriately justified.

- Prompt examination of the inmate followed the move and findings were noted on the video tape.

- The method of chemical agents used was predetermined and use of devices was in accordance with the Correctional Services Manual.

- The inmate was given the opportunity to voluntarily submit to the placement of restraints.

- Conversations were appropriate and necessary between team members and individuals during the use of force.

b. **Report Completion.**  When this review is completed, an After-Action Review Report (BP-E586) must be completed, as soon as possible, not later than two working days after the inmate has been removed from restraints.  This will ensure that staff with relevant information will be available and any necessary medical follow-up can be immediately provided to ascertain the nature of any injuries involved.

The Warden or designee will attest by his or her signature that the review was conducted and the use of force was appropriate or inappropriate.

c. **Further Investigation.**  The reviewers should also decide if the matter requires further investigation.  If deemed appropriate, the Warden will refer the matter for further investigation to the Office of Inspector General, Office of

Exhibit 1
Attach. H, p. 22

P5566.06, CN-1
8/29/2014
Page 22

Internal Affairs, or Federal Bureau of Investigation.  Copies of the report must be forwarded to the Regional Director and Assistant Director, Correctional Programs Division, Central Office.

   d.  **Report on Restraints Use.**  A report is not necessary for the general use of restraints.  For example, a report is not required in the routine movement or transfer of inmates.

16.  **TRAINING IN THE CONFRONTATION AVOIDANCE/USE OF FORCE TECHNIQUE.**  In order to control any potential situation involving aggressive inmates, all staff must be made aware of their responsibilities through ongoing training.  At a minimum, training must cover:

- communication techniques,
- cultural diversity,
- dealing with the mentally ill,
- confrontation avoidance procedures,
- the application of restraints (progressive and hard), and
- reporting procedures.

   a.  **Training Topics.**  The Warden of each institution shall determine how many staff should be trained in confrontation avoidance procedures and forced cell move techniques.  At a minimum, these staff shall be trained on an annual basis.  Each staff member participating in a calculated forced cell move must have documented proof of annual training in these areas.  Training should also include specific information pertaining to special situations.

   b.  **Restraints Training.**  Staff should be trained thoroughly in the use of both soft and hard restraints on an annual basis.  The application of soft restraints to an inmate can be cumbersome if proper training is not provided.

   Soft restraints such as vinyl or leather should be used prior to applying hard restraints.  For pregnant inmates, the approved vinyl or leather restraint belt should be used instead of a metal waist chain, whenever possible, to prevent injury to the inmate or fetus.


                              /s/
                         Harley G. Lappin
                         Director

Exhibit 1
Attach. H, p. 23

# Bureau of Prisons
## Health Services
## Clinical Encounter

| | | |
|---|---|---|
| Inmate Name: LABARGE, BRANDEN MAURICE | | Reg #: 09683-029 |
| Date of Birth: ▇▇▇▇▇▇ | Sex: M   Race: WHITE | Facility: CAA |
| Encounter Date: 03/21/2015 15:55 | Provider: Burgerhoff, Patricia RN | Unit: Z04 |

Injury Assessment-Not Work Related encounter performed at Special Housing Unit.

**SUBJECTIVE:**

> **INJURY  1        Provider:**   Burgerhoff, Patricia RN

> > **Date of Injury:**     03/21/2015 15:55          **Date Reported for Treatment:**        03/21/2015 16:47
> > **Work Related:**     No            **Work Assignment:**     SHU UNASSG
> > **Pain Location:**     Head
> > **Pain Scale:**     5
> > **Pain Qualities:**  Throbbing
> > **Where Did Injury Happen (Be specific as to location):**
> > > SHU upper tier near upper C range.

> > **Cause of Injury (Inmate's Statement of how injury occurred):**
> > > Immediate Use of Force.

> > **Symptoms (as reported by inmate):**
> > > "Chin is bleeding".

**ROS:**
> **GI**
> > **General**
> > > No: Nausea, Vomiting

**OBJECTIVE:**

**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 03/21/2015 | 16:47 CAA | 97.9 | 36.6 | Tympanic | Burgerhoff, Patricia RN |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 03/21/2015 | 16:47 CAA | 68 | Radial | Regular | Burgerhoff, Patricia RN |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 03/21/2015 | 16:47 CAA | 16 | Burgerhoff, Patricia RN |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 03/21/2015 | 16:47 CAA | 122/82 | Left Arm | Standing | Adult-large | Burgerhoff, Patricia RN |

**SaO2:**

| Date | Time | Value(%) | Air | Provider |
|---|---|---|---|---|
| 03/21/2015 | 16:47 CAA | 99 | Room Air | Burgerhoff, Patricia RN |

**Exam:**
> **General**
> > **Affect**
> > > Yes: Pleasant, Cooperative

**Exhibit 1**
**Attach. I, p. 1**

| | |
|---|---|
| Inmate Name:  LABARGE, BRANDEN MAURICE | |
| Date of Birth: | Sex:      M      Race:   WHITE      Reg #:   09683-029 |
| Encounter Date: 03/21/2015 15:55 | Provider:  Burgerhoff, Patricia RN      Facility:  CAA      Unit:      Z04 |

**Exam:**

**Appearance**

Yes: Appears Well, Alert and Oriented x 3

No: Appears Distressed, Unconscious, Lethargic, Dyspneic, Appears in Pain, Writhing in Pain, Pale, Diaphoretic

**Skin**

**General**

Yes: Within Normal Limits, Dry, Warmth, Erythema

No: Skin Intact, Clammy, Cool, Diaphoretic, Tenderness

**Trauma**

Yes: Swelling, Ecchymosis

No: Deformity, Abrasion

New injury: 1/2 cm cut shallow to center lower chin.

Old injuries: Left orbital area with mild swelling, bruising. 1cm cut left eyebrow area, scabbed.

**Eyes**

**General**

Yes: PERRLA

**Periorbital/Orbital/Lids**

Yes: Swelling L, Trauma L, Ecchymosis L

Old trauma to left orbital area, mild swelling, bruising purple several days old.

**Nose**

**General**

Yes: Nares Patent, Posterior Epistaxis

No: Deformity

Dried blood noted left nare. No deformity noted.

**Neck**

**General**

Yes: Within Normal Limits, Supple

No: Trauma

**Pulmonary**

**Observation/Inspection**

Yes: Within Normal Limits

No: Respiratory Distress

**Auscultation**

Yes: Clear to Auscultation

**Cardiovascular**

**Observation**

Yes: Within Normal Limits, Normal Rate, Regular Rhythm

**Peripheral Vascular**

**Arms**

Yes: Radial Pulse Normal, Capillary Refill Normal

**Legs**

Yes: Dorsalis Pedis Normal, Capillary Refill Normal

**Musculoskeletal**

**Gait**

Yes: Normal Gait

**ASSESSMENT:**

Exhibit 1
Attach. l, p. 2

| | | | | |
|---|---|---|---|---|
| Inmate Name:   LABARGE, BRANDEN MAURICE | | | Reg #: | 09683-029 |
| Date of Birth: | Sex:   M   Race:  WHITE | | Facility: | CAA |
| Encounter Date: 03/21/2015 15:55 | Provider:  Burgerhoff, Patricia RN | | Unit: | Z04 |

Cut(s) and/or Abrasion(s)

AA Ox3 ambulatory steady gait. Complains of 5/10 throbbing headache. Denies any blurred vision. Denies any n/v or SOB. Lungs clear bilaterally. Able to speak in full sentences without being winded. New injury note: Small 1/2 cm shallow cut noted to middle lower chin. Cleansed with sterile water applied non-adhere pad and  secured with cover-roll stretch. Old injuries: Left orbital area with purple bruising and mild swelling, several days old. Small 1 cm cut near left eyebrow area, scabbed, signs of healing. No other injuries noted. NAD. +CCSM x 4 extremities, +distal pulses. Restraints do not obstruct breathing or circulation. NAD.

**PLAN:**

**Disposition:**

Follow-up at Sick Call as Needed
Return Immediately if Condition Worsens

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 03/21/2015 | Counseling | Access to Care | Burgerhoff, Patricia | Verbalizes Understanding |

**Copay Required:** No          **Cosign Required:** Yes
**Telephone/Verbal Order:**   No

Completed by Burgerhoff, Patricia RN on 03/21/2015 17:52
Requested to be cosigned by  Mowatt, S. MD.
Cosign documentation will be displayed on the following page.

Exhibit 1
Attach. I, p. 3

BP-A0288
Aug 11                          **INCIDENT REPORT** CDFRM

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| Part I - Incident Report |
|---|

| 1. Institution:  **USP CANAAN** | | | |
|---|---|---|---|
| 2. Inmates Name<br>**Labarge, Branden** | 3. Register Number<br>**09683-029** | 4. Date of Incident<br>**3/21/2015** | 5. Time<br>**3:55PM** |
| 6. Place of Incident<br>**SHU Upper Tier** | 7. Assignment<br>**SHU unassign** | 8. Unit<br>**F-B** | |
| 9. Incident: **Threatening another with bodily harm, Refusing<br>to work or accept a program assignment** | | 10. Prohibited Act Code(s) **203, 306** | |

11. Description Of Incident (Date: _3/21/2015_   Time: _3:55PM_ Staff became aware of incident)

On March 21, 2015 at approximately 3:55 PM, I was escorting inmate Labarge, Branden reg #09683-029
to his cell assignment on the C-Upper range in the Special Housing Unit. Upon reaching the grill
for the C-Upper range, inmate Labarge stopped and refused to walk to his assigned cell. I gave
inmate Labarge a direct order to proceed to the cell. Inmate Labarge turned his head and exclaimed
"gonna fuck me up if I try to put him in the cell!" I then gave inmate Labarge a direct order
to not turn his head and not to resist the escort. He then turned in an aggressive manner and
attempted to break free from escort. I placed inmate Labarge on the ground with the least amount
of force necessary to gain proper control of inmate Labarge. He was then escorted to medical
for assessment.

| 12. Typed Name/Signature of Reporting Employee<br>J. Getz/ | 13.Date And Time<br>3/21/2015    4:30PM |
|---|---|
| 14. Incident Report Delivered to Above Inmate By<br>(Type/Name/Signature) | 15. Date Incident<br>Report Delivered<br>3/22/15 | 16. Time Incident<br>Report Delivered |

17. Comments of Inmate to Committee Regarding Above Incident

See Attached

| 18. A. It is the finding of the committee that you: | B. | _✓_ The Committee is referring the<br>Charge(s) to the DHO for further<br>Hearing. |
|---|---|---|
| ___ Committed the Prohibited Act as charged.<br>___ Did not Commit a Prohibited Act.<br>___ Committed Prohibited Act Code(s) _____ | C. | ___ The Committee advised the inmate of<br>its finding and of the right to file<br>an appeal within 20 calendar days. |

19. Committee Decision is Based on Specific Evidence as Follows:

See Attached

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate
committed prohibited act)

See Attached

21. Date And Time Of Action 3/23/15 - 1006am (The UDC Chairman=s signature certifies who sat on the
UDC and that the completed report accurately reflects the UDC proceedings.)

B. Roberts/

| Chairman (Typed Name/Signature) | Member (Typed Name) | Member (Typed Name) |
|---|---|---|

INSTRUCTIONS: All items outside heavy rule are for staff use only. Begin entries with the number 1 and work up. Entries not completed will be voided by staff.

DISTRIBUTE:     ORIGINAL-Central File record; COPY-1- DHO; COPY-2- Inmate After UDC Action; COPY-3- Inmate within 24 hours of Part I Preparation.

WDP                         Prescribed by P5270                Replaces BP-S288.052 Of MAY 94

Exhibit 1
Attach. J, p. 1

| Part III - Investigation | 22. Date And Time Investigation Began 3/22/2015 11:30 am |
|---|---|

23. Inmate Advised Of Right To Remain Silent: You are advised of your right to remain silent at all stages of the discipline process. Your silence may be used to draw an adverse inference against you at any stage of the discipline process. Your silence alone may not be used to support a finding that you have committed a prohibited act.

The Inmate Was Advised Of The Above Right By Lt. R. Hagemeyer        At (Date/time) 3/22/15 11:31

24. Inmate statement and attitude

Inmate Labarge #09683-029 that he acknowledged and understood his rights.

Inmate Labarge #09683-029 displayed a fair attitude

Inmate Labarge #09683-029 stated "No comment".

25. Other facts about the incident, statements of those persons present at scene, disposition of evidence, etc.

Inmate Labarge #09683-029 did not request any witnesses.

26. Investigator's comments and conclusions

Based upon this incident report as written I conclude the inmate did commit the prohibited act as charged.

27. Action taken

This incident report will be forwarded to UDC for further disposition.

Date and Time Investigation Completed 3/22/2015 11:33 am

Printed Name/Signature Of Investigator R. Hagemeyer                Title Lieutenant

Labarge, Brandon, #09683-029
03-23-2015/10:06 a.m.
INCIDENT REPORT #2694303

17. The inmate was provided an opportunity to provide a statement, in which he stated," I was unable to go into the cell that they wanted.  I did not threaten the officer."

19.  UDC finds the charge to be warranted based on Staff Statements in Section 11 that inmate Labarge refused a program assignment by refusing staff direct orders to go into his assigned cell.

20.  The UDC refers the report to the DHO for further hearing and recommends the DHO apply the appropriate sanctions available at that level should the inmate be found to have committed the prohibited act.

B. Roberts/Counselor
     Chairman

Exhibit 1
Attach. J, p. 3

BP-A0294     **Notice of Discipline Hearing Before the (DHO)** CDFRM
JUN 11

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

CAA  Usp Canaan
_____
Institution

3/23/15
_____
Date

TO: La barge                           REG. NO.: 09683~029

ALLEGED VIOLATION(S):

DATE OF OFFENSE: 03/21/20 15           CODE NO.: 203, 306

You are being referred to the DHO for the above charge(s).

The hearing will be held on: _____ at _____ (A.M./P.M.) at the following location:

_____

You are entitled to have a full-time staff member represent you at the hearing.  Please indicate below
whether you desire to have a staff representative, and if so, his or her name.

I (do) ____ (do not) ✓ wish to have a staff representative.

If so, the staff representative's name is: _____

You will also have the right to call witnesses at the hearing and to present documentary evidence in your
behalf; provided, calling your witnesses will not jeopardize institutional safety.  Names of witnesses you
wish to call should be listed below.  Briefly state to what each proposed witness would be able to testify.

I (do) ____ (do not) ✓ wish to have witnesses.

| NAME: | CAN TESTIFY TO: |
|-------|-----------------|
|       |                 |

| NAME: | CAN TESTIFY TO: |
|-------|-----------------|
|       |                 |

| NAME: | CAN TESTIFY TO: |
|-------|-----------------|
|       |                 |

The Discipline Hearing Officer will call those witnesses (Staff or Inmate) who are reasonably available,
and who are determined by the DHO to have information relevant to the charge(s).  Repetitive witnesses and
repetitive character references need not be called.  Unavailable witnesses may be asked to submit written
statements.

If additional space is needed, use the reverse side of this form.  Date, sign, and return this form to the
DHO.

DATE: 3/23/15     SIGNATURE: Refused to sign

Notice of hearing before DHO given inmate 3/23/15 ___ by D. Roberts / G. M
                                        Date/Time                Staff Printed Name/Signature

_(This form may be replicated via WP)_          _Replaces BP-294(52) of JAN 88_

PDF                              Prescribed by P5270

**Exhibit 1**
**Attach. J, p. 4**

BP-A0293        **Inmate Rights at Discipline Hearing**  CDFRM
AUG 11
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

Institution: USP Canaan

As an inmate charged with a violation of Bureau of Prisons rules or regula:.
referred to the Discipline Hearing Officer (DHO) for disposition, you have
following rights:

1. The right to have a written copy of the charge(s) against you at leas:
hours prior to appearing before the Discipline Hearing Officer;

2. The right to have a full-time member of the staff who is reasonab.,
available to represent you before the Discipline Hearing Officer;

3. The right to call witnesses (or present written statements of unavailar
witnesses) and to present documentary evidence in your behalf, prov.
institutional safety would not be jeopardized;

4. The right to present a statement or to remain silent. Your silence may
used to draw an adverse inference against you. However, your silence alone
not be used to support a finding that you committed a prohibited act;

5. The right to be present throughout the discipline hearing except during
period of deliberation or when institutional safety would be jeopardized.
you elect not to appear before the DHO, you may still have witnesses and
staff representative appear on your behalf;

6. The right to be advised of the DHO's decision, the facts supporting
decision, except where institutional safety would be jeopardized, and the
disposition in writing; and,

The right to appeal the decision of the DHO by means of the Administra
Remedy Procedure to the Regional Director within 20 calendar days of notice
the DHO's decision and disposition.

I hereby acknowledge that I have been advised of the above rights afforded me at
hearing before the Discipline Hearing Officer. I have further been advised that
I have previously received either a presumptive or effective parole date from
Parole Commission, a finding by the DHO that I committed the prohibited act(s)
result in a rescission or retardation by the Parole Commission of the presump'
or effective parole date.

Inmate's Name: Labarge _____      Reg. No.: 09683-029 _____

Inmate Signature: _Refusd to sisn_____      Date: 03/23/2015 _____

Notice of rights given to inmate(Date/time): 9:00AM - 03/23/2015 _____

by: B. Roberts / _____
                Staff Printed Name/Signature

(This form may be replicated via WP)                    Replaces BP-S293(52) of JAN 8..

Exhibit 1
Attach. J, p. 5

Inmate Rights at Discipline Hearing (continued)

Institution: USP Canaan

**Where an inmate has been advised of the rights afforded at a hearing before the DHO, but refuses to sign the acknowledgement, the following should be completed.**

I have personally advised (Inmate's Name/Register No.):
of the above rights afforded at a discipline hearing before the DHO; however the inmate has refused to sign the acknowledgment.

Signed: _B. Roberts_ _____

Staff Typed or Printed Name: B. Roberts _____

Date: 03/23/2015 _____

---

WAIVER OF 24 HOUR NOTICE

I have been advised that I have the right to have a written copy of the charge against me at least 24 hours prior to appearing before the DHO. I wish to waive this right and proceed with the DHO hearing at this time.

Signed: _____

Typed or Printed Name: _____

Register Number: _____

Date: _____ Time: _____

Witnessed by: _____
(Staff Printed Name/Signature)

**Exhibit 1
Attach. J, p. 6**

```
  CAADC        *        INMATE DISCIPLINE DATA          *      04-02-2015
PAGE 001       *        CHRONOLOGICAL DISCIPLINARY RECORD *      14:13:52

REGISTER NO: 09683-029 NAME..: LABARGE, BRANDEN MAURICE
FUNCTION...: PRT    FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 04-02-2015
-------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2696005 - SANCTIONED INCIDENT DATE/TIME: 03-21-2015 1555
DHO HEARING DATE/TIME: 04-02-2015 1050
FACL/CHAIRPERSON.....: CAA/M. RENDA
REPORT REMARKS.......: REFUSED TO WALK TO CELL & RESIST ESCORT/STATED WOULD "F-
                       CK UP" RPT STAFF MEMBER IF PLACED IN CELL. DENIS THRTS
   203  THREATENING BODILY HARM - FREQ: 1 ATT: SN1
        DIS GCT    / 27 DAYS / CS
        COMP:020 LAW:P   TO DEMONSTRATE SERIOUSNESS OF ACT
        DS         / 30 DAYS / CS
        COMP:     LAW:    1 MONTH PER $270.09 (EXPIRES 7/2/2015)
        IMPOUND    / 3 MONTHS / CS
        COMP:     LAW:    EXCLUDING RELIGIOUS AND LEGAL MATERIAL
        LP COMM    / 1 YEARS / CS
        COMP:     LAW:    EXPIRES 4/2/2016
        LP EMAIL   / 1 YEARS / CS
        COMP:     LAW:    EXPIRES 10/2/2017 CS W/ ALL TERMS
   307  REFUSING TO OBEY AN ORDER - FREQ: 1
        DIS GCT    / 13 DAYS / CS
        COMP:020 LAW:P   TO DEMONSTRATE SERIOUSNESS OF ACT
        LP COMM    / 1 YEARS / CS
        COMP:     LAW:    CONCURRENT
        LP EMAIL   / 1 YEARS / CS
        COMP:     LAW:    CONCURRENT
-------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2695590 - SANCTIONED INCIDENT DATE/TIME: 12-22-2014 1045
DHO HEARING DATE/TIME: 04-02-2015 1045
FACL/CHAIRPERSON.....: CAA/M. RENDA
REPORT REMARKS.......: USE OF TRULINCS IN FURTHERANCE OF INTERSTATE SUBOXONE IN
                       TRODUCTION SCHEME. ADMITS-STATED "I PLEAD GUILTY."
   196  MAIL ABUSE, CRIMINAL - FREQ: 1
        DIS GCT    / 40 DAYS / CS
        COMP:020 LAW:P   TO DEMONSTRATE SERIOUSNESS OF ACT
        LP EMAIL   / 18 MONTHS / CC
        COMP:     LAW:    CONCURRENT
        LP MPLAYER / 180 DAYS / CC
        COMP:     LAW:    6 MONTHS (EXPIRES 10/2/2015)-CONCURRENT
        LP PHONE   / 18 MONTHS / CC
        COMP:     LAW:    CONCURRENT
        LP VISIT   / 18 MONTHS / CC
        COMP:     LAW:    CONCURRENT
        LP VISITRS / 18 MONTHS / CC
        COMP:     LAW:    CONCURRENT




G0002      MORE PAGES TO FOLLOW . . .
```

```
  CAADC        *        INMATE DISCIPLINE DATA          *      04-02-2015
PAGE 002       *        CHRONOLOGICAL DISCIPLINARY RECORD *      14:13:52

REGISTER NO: 09683-029 NAME..: LABARGE, BRANDEN MAURICE
FUNCTION...: PRT    FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 04-02-2015
-------------------------------------------------------------------------
DHO HEARING DATE/TIME: 04-02-2015 1045 REPORT 2695590 CONTINUED
   199  DISRUPTIVE CONDUCT-GREATEST - FREQ: 1
        DIS GCT    / 40 DAYS / CS
        COMP:020 LAW:P   TO DEMONSTRATE SERIOUSNESS OF ACT (M/L CODE 197)
        DS         / 60 DAYS / CS
        COMP:     LAW:    2 MONTHS PER $270.09 (EXPIRES 6/2/2015)
        FF NVGCT   / 272 DAYS / CS
        COMP:020 LAW:P   TO DEMONSTRATE SERIOUSNESS OF ACT
        IMPOUND    / 2 MONTHS / CS
        COMP:     LAW:    EXCLUDING RELIGIOUS AND LEGAL MATERIAL
        LP EMAIL   / 18 MONTHS / CS
        COMP:     LAW:    EXPIRES 10/2/2016
        LP MPLAYER / 180 DAYS / CS
        COMP:     LAW:    6 MONTHS (EXPIRES 10/2/2015)
        LP PHONE   / 18 MONTHS / CS
        COMP:     LAW:    EXPIRES 12/17/2016 CS W/ ALL TERMS
        LP VISIT   / 18 MONTHS / CS
        COMP:     LAW:    EXPIRES 12/17/2016 CS W/ ALL TERMS
        LP VISITRS / 18 MONTHS / CS
        COMP:     LAW:    TO BEGIN UPON REINSTATEMENT OF VISITING PRIVILEGES
                         (NONCONTACT AND IMMEDIATE FAMILY ONLY)
-------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2655821    SANCTIONED INCIDENT DATE/TIME: 11-29-2014 1123
DHO HEARING DATE/TIME: 12-17-2014 0820
FACL/CHAIRPERSON.....: CAA/K. BIGART
APPEAL CASE NUMBER(S): 809561
REPORT REMARKS.......: INMATE ADMITTED USING THE PHONE, DENIED KNOWING GIVING A
                       MESSAGE WAS AGAINST GUIDELINES
   297  PHONE ABUSE-DISRUPT MONITORING - FREQ: 1
        DIS GCT    / 27 DAYS / CS
        COMP:020 LAW:P   DUE TO SENTENCING GUIDELINES
        DS         / 60 DAYS / CS / SUSPENDED 90 DAYS
        COMP:     LAW:    SUSPENDED PENDING CLEAR INSTITUTION CONDUCT
        LP EMAIL   / 6 MONTHS / CS / SUSPENDED 90 DAYS
        COMP:     LAW:    SUSPENDED PENDING CLEAR INSTITUTION CONDUCT
        LP PHONE   / 6 MONTHS / CS
        COMP:     LAW:    TO EXPIRECON 06-17-2015
        LP VISIT   / 6 MONTHS / CS
        COMP:     LAW:    TO EXPIRE ON 06-17-2015
-------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2472577 - SANCTIONED INCIDENT DATE/TIME: 07-26-2013 1400
UDC HEARING DATE/TIME: 07-29-2013 0835
FACL/UDC/CHAIRPERSON.: CAA/F2 UNIT/NEWCOMB
REPORT REMARKS.......: UDC FINDS THE INMATE COMMITTED THE PROHIBITIVE ACT.




G0002      MORE PAGES TO FOLLOW . . .
```

Exhibit 1
Attach. J, p. 7

```
   CAADC          *       INMATE DISCIPLINE DATA        *    04-02-2015
   PAGE 003        *   CHRONOLOGICAL DISCIPLINARY RECORD *    14:13:52

REGISTER NO: 09683-029 NAME..: LABARGE, BRANDEN MAURICE
FUNCTION...: PRT      FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 04-02-2015

UDC HEARING DATE/TIME: 07-29-2013 0635 REPORT 2472577 CONTINUED
   310  BEING ABSENT FROM ASSIGNMENT - FREQ: 1
        LP PHONE    / 15 DAYS / CS
        COMP:    LAW:  15 DAYS LOSS OF PHONE
REPORT NUMBER/STATUS.: 2346228 - SANCTIONED INCIDENT DATE/TIME: 09-01-2012 1130
DHO HEARING DATE/TIME: 09-21-2012 1200
FACL/CHAIRPERSON.....: COP/A. RICH
APPEAL CASE NUMBER(S): 708277
REPORT REMARKS.......: PLRA I/M; NO COMMENT; DHO FOUD I/M GUILTY OF POSS.
                        OF INTOXICANTS
   113  POSSESSING DRUGS/ALCOHOL - FREQ: 2 ATI: DAC
        DIS GCT     / 27 DAYS / CS
        COMP:020 LAW:P
        DS          / 10 DAYS / CS
        COMP:    LAW:
        LP COMM     / 90 DAYS / CS
        COMP:    LAW:   RESTORE 2-2-2013
        LP VISIT    / 120 DAYS / CS
        COMP:    LAW:   RESTORE 1-21-2013
REPORT NUMBER/STATUS.: 2352758 - SANCTIONED INCIDENT DATE/TIME: 09-18-2012 0845
UDC HEARING DATE/TIME: 09-19-2012 0805
FACL/UDC/CHAIRPERSON.: COP/SMU/R.NARVAEZ
REPORT REMARKS.......: BASED ON OFFICER STATEMENT UDC FINDS INMATE GUILTY.
   307  REFUSING TO OBEY AN ORDER - FREQ: 1
        LP COMM     / 30 DAYS / CS
        COMP:    LAW:   RESTORED ON 12-02-2012.
REPORT NUMBER/STATUS.: 2294697 - SANCTIONED INCIDENT DATE/TIME: 04-18-2012 1325
DHO HEARING DATE/TIME: 04-20-2012 1400
FACL/CHAIRPERSON.....: COP/A. RICH
REPORT REMARKS.......: PLRA I/M; ADMITS GUILY, DHO FOUND I/M GUILTY OF POSS.
                        OF DRUG PARAPHERNLIA
   113  POSSESSING DRUGS/ALCOHOL - FREQ: 1 ATI: DPC
        DIS GCT     / 27 DAYS / CS
        COMP:020 LAW:P
        DS          / 30 DAYS / CS
        COMP:    LAW:
        LP COMM     / 120 DAYS / CS
        COMP:    LAW:   RESTORE 13-2-2012
        LP PHONE    / 120 DAYS / CS
        COMP:    LAW:   RESTORE 13-2-2012



G0002      MORE PAGES TO FOLLOW . . .
```

```
   CAADC          *       INMATE DISCIPLINE DATA        *    04-02-2015
   PAGE 004        *   CHRONOLOGICAL DISCIPLINARY RECORD *    14:13:52

REGISTER NO: 09683-029 NAME..: LABARGE, BRANDEN MAURICE
FUNCTION...: PRT      FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 04-02-2015

REPORT NUMBER/STATUS.: 2285423 - SANCTIONED INCIDENT DATE/TIME: 03-26-2012 1521
DHO HEARING DATE/TIME: 04-02-2012 1400
FACL/CHAIRPERSON.....: COP/A. RICH
REPORT REMARKS.......: PLRA I/M; WAIVED DHO; DHO FOUND I/M GUILTY OF FIGHTING
                        WITH I/M LONG 809161-010 AND REFUSE AN ORDER
   201  FIGHTING WITH ANOTHER PERSON - FREQ: 1
        DIS GCT     / 14 DAYS / CS
        COMP:020 LAW:P
        DS          / 30 DAYS / CS / SUSPENDED 90 DAYS
        COMP:    LAW:
        LP COMM     / 90 DAYS / CS
        COMP:    LAW:   RESTORE 7-2-2012
   307  REFUSING TO OBEY AN ORDER - FREQ: 1
        DIS GCT     / 7 DAYS / CS
        COMP:020 LAW:P
        DS          / 15 DAYS / CS / SUSPENDED 90 DAYS
        COMP:    LAW:
        LP PHONE    / 90 DAYS / CS
        COMP:    LAW:   RESTORE 7-2-2012
REPORT NUMBER/STATUS.: 2211133 - SANCTIONED INCIDENT DATE/TIME: 09-16-2011 1315
UDC HEARING DATE/TIME: 09-19-2011 3530
FACL/UDC/CHAIRPERSON.: COP/J/K/M PEREZ
REPORT REMARKS.......: UDC FOUND INMATE GUILTY OF CHARGE 326, LOSS OF COMM, &
                        PHONE FOR 60 DAYS.
   326  POSSESSING GAMBL PARAPHERNALIA - FREQ: 1
        LP COMM     / 60 DAYS / CS
        COMP:    LAW:   TO DETER INMATE BEHAVIOR
                        RESTORED ON 12-09-2011.
        LP PHONE    / 60 DAYS / CS
        COMP:    LAW:   TO DETER INMATE BEHAVIOR
                        RESTORED ON 03-06-2012.
REPORT NUMBER/STATUS.: 2194596 - SANCTIONED INCIDENT DATE/TIME: 08-04-2011 2215
UDC HEARING DATE/TIME: 08-09-2011 1410
FACL/UDC/CHAIRPERSON.: COP/J/K/M NARVAEZ
REPORT REMARKS.......: UDC FOUND INMATE GUILTY OF CHARGE 320, LOSS OF COMM &
                        PHONE FOR 60 DAYS.
   320  FAILING TO STAND COUNT - FREQ: 1
        LP COMM     / 60 DAYS / CS
        COMP:    LAW:   TO DETER INMATE BEHAVIOR
                        RESTORED ON 10-09-2011.



G0002      MORE PAGES TO FOLLOW . . .
```

**Exhibit 1**
Attach. J, p. 8

```
CAADC          *         INMATE DISCIPLINE DATA          *      04-02-2015
PAGE 005        *      CHRONOLOGICAL DISCIPLINARY RECORD    *      14:13:52

REGISTER NO: 09683-029 NAME..: LABANGE, BRANDEN MAURICE
FUNCTION...: PRT         FORMAT: CHRONO     LIMIT TO ___ MOS PRIOR TO 04-02-2015

UDC HEARING DATE/TIME: 08-09-2011 1410 REPORT 2194596 CONTINUED
    LP PHONE   / 60 DAYS / CS
    COMP:    LAW:    TO DETER INMATE BEHAVIOR
                     RESTORED ON 01-06-2012.
-----------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2153404 - SANCTIONED INCIDENT DATE/TIME: 04-20-2011 1458
DHO HEARING DATE/TIME: 05-06-2011 1015
FACL/CHAIRPERSON.....: ATW/GONZALES,V
REPORT REMARKS.......: BASED ON THE EVIDENCE INMATE WAS FOUND GUILTY.
    201  FIGHTING WITH ANOTHER PERSON - FREQ: 1
         DIS GCT    / 27 DAYS / CS
         COMP:020 LAW:P
         DS         / 30 DAYS / CS / SUSPENDED 180 DAYS
         COMP:    LAW:
         LP PHONE   / 180 DAYS / CS
         COMP:    LAW:
-----------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1768633 - SANCTIONED INCIDENT DATE/TIME: 08-19-2008 1955
DHO HEARING DATE/TIME: 09-09-2008 1332
FACL/CHAIRPERSON.....: LVN/P. POTTIOS
REPORT REMARKS.......: I/M ADMITTED TO POSSESSING A SYRINGE BUT DENIED PASSING
                       THE SYRINGE TO HIS CELLMATE. SANCTIONED ACCORDINGLY.
    113  POSSESSING DRUGS/ALCOHOL - FREQ: 1 ATI: ???
         DIS GCT    / 41 DAYS / CS
         COMP:020 LAW:P  I/M SANCTIONED TO A 41 DAY DISALLOWANCE OF GCT
                         FOR POSSESSING DRUG ITEMS (SYRINGE).
         DS         / 30 DAYS / CS
         COMP:    LAW:    I/M SANCTIONED TO 30 DAYS DS TIME FOR POSSESSING
                          A DRUG ITEM (SYRINGE).
         LP PHONE   / 90 DAYS / CS
         COMP:    LAW:    I/M SANCTIONED TO 90 DAYS LP PHONE EFFECTIVE
                          12-08-2008 TO 03-07-2009.
         LP VISIT   / 90 DAYS / CS
         COMP:    LAW:    I/M SANCTIONED TO 90 DAYS LP VISIT EFFECTIVE
                          12-08-2008 TO 03-07-2009.
-----------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1768845 - SANCTIONED INCIDENT DATE/TIME: 08-19-2008 1955
DHO HEARING DATE/TIME: 09-09-2008 1330
FACL/CHAIRPERSON.....: LVN/P. POTTIOS
REPORT REMARKS.......: I/M ADMITTED THE BAG FOUND CONTAINING AMPHETAMINE WAS
                       HIS. DHO SANCTIONED I/M ACCORDINGLY.



G0002      MORE PAGES TO FOLLOW . . .
```

```
CAADC          *         INMATE DISCIPLINE DATA          *      04-02-2015
PAGE 006        *      CHRONOLOGICAL DISCIPLINARY RECORD    *      14:13:52

REGISTER NO: 09683-029 NAME..: LABANGE, BRANDEN MAURICE
FUNCTION...: PRT         FORMAT: CHRONO     LIMIT TO ___ MOS PRIOR TO 04-02-2015

DHO HEARING DATE/TIME: 09-09-2008 1330 REPORT 1768845 CONTINUED
    113  POSSESSING DRUGS/ALCOHOL - FREQ: 1 ATI: ???
         DIS GCT    / 41 DAYS / CS
         COMP:020 LAW:P  I/M SANCTIONED TO 41 DAY DISALLOWANCE OF GCT FOR
                         POSSESSING AMPHETAMINE.
         DS         / 30 DAYS / CS
         COMP:    LAW:    I/M SANCTIONED TO 30 DAYS DS TIME FOR POSSESSING
                          AMPHETAMINE.
         LP COMM    / 90 DAYS / CS
         COMP:    LAW:    I/M SANCTIONED TO 90 DAYS LP COMM EFFECTIVE
                          09-09-2008 TO 12-08-2008.
         LP PHONE   / 90 DAYS / CS
         COMP:    LAW:    I/M SANCTIONED TO 90 DAYS LP PHONE EFFECTIVE
                          09-09-2008 TO 12-08-2008.
         LP VISIT   / 90 DAYS / CS
         COMP:    LAW:    I/M SANCTIONED TO 90 DAYS LP VISIT EFFECTIVE
                          09-09-2008 TO 12-08-2008.
-----------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1708401 - SANCTIONED INCIDENT DATE/TIME: 03-09-2008 1645
DHO HEARING DATE/TIME: 03-21-2008 1320
FACL/CHAIRPERSON.....: LVN/ALEXANDER
REPORT REMARKS.......: I/M ADMITTED GUILT AND POSSESSION OF INTOXICANTS
    222  POSSESSING INTOXICANTS - FREQ: 1
         DIS GCT    / 27 DAYS / CS
         COMP:    LAW:    I/M SANCTIONED TO 27 DAYS LOSS OF GCT FOR
                          POSSESSION OF INTOXICANTS.
         DS         / 30 DAYS / CS
         COMP:    LAW:    I/M SANCTIONED TO 30 DAYS D/S TIME FOR BEING
                          FOUND TO HAVE BEEN IN POSSESSION OF INTOXICANTS.
         LP COMM    / 3 MONTHS / CS
         COMP:    LAW:    I/M SANCTIONED TO 3 MONTHS LP COMM EFFECTIVE
                          03-21-2008 TO 06-21-2008.
-----------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1662486 - SANCTIONED INCIDENT DATE/TIME: 11-01-2007 1701
UDC HEARING DATE/TIME: 11-02-2007 1530
FACL/UDC/CHAIRPERSON.: LVN/NLBL/RCAMARA
REPORT REMARKS.......: N/A
    397  PHONE ABUSE - NO CIRCUMVENTION - FREQ: 1
         LP VISIT   / 30 DAYS / CS
         COMP:    LAW:    N/A




G0002      MORE PAGES TO FOLLOW . . .
```

**Exhibit 1**
Attach. J, p. 9

```
CAADC          *          INMATE DISCIPLINE DATA          *     04-02-2015
PAGE 007 OF 007 *     CHRONOLOGICAL DISCIPLINARY RECORD    *     14:13:52

REGISTER NO: 09683-039 NAME..: LABARGE, BRANDEN MAURICE
FUNCTION...: PRT     FORMAT: CHRONO   LIMIT TO ___ MOS PRIOR TO 04-02-2015
----------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1494121 - SANCTIONED INCIDENT DATE/TIME: 07-25-2006 1503
DHO HEARING DATE/TIME: 08-03-2006 0800
FACL/CHAIRPERSON.....: SET/RAITT
REPORT REMARKS.......: INMATE ADMITTED TO FIGHTING WITH ANOTHER INMATE
    201  FIGHTING WITH ANOTHER PERSON - FREQ: 1
         DIS GCT    / 27 DAYS / CS
         COMP:000 LAW:   DISALLOWED 27 DAYS OF GCT
         DS         / 30 DAYS / CS / SUSPENDED 180 DAYS
         COMP:    LAW:   DISCIPLINARY SEGREGATION SUSPENDED PENDING 180
                         DAYS CLEAR CONDUCT
         LP COMM    / 120 DAYS / CS
         COMP:    LAW:   120 DAYS LOSS OF COMMISSARY TO RUN CONSECUTIVE
                         WITH PREVIOUS SANCTIONS
----------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1432429 - SANCTIONED INCIDENT DATE/TIME: 02-08-2006 2013
DHO HEARING DATE/TIME: 05-12-2006 0630
FACL/CHAIRPERSON.....: SET/RAITT
REPORT REMARKS.......: INMATE ADMITTED TO CHARGE.  HE STATED THE OTHER INMATE
                       HAD THE WEAPON AND HE TOOK IT AWAY FROM HIM
    104  POSSESSING A DANGEROUS WEAPON - FREQ: 1
         DIS GCT    / 15 DAYS / CS
         COMP:000 LAW:   DISALLOWED 15 DAYS OF GOOD CONDUCT TIME
         DS         / 45 DAYS / CS
         COMP:    LAW:   45 DAYS DISCIPLINARY SEG. TO RUN CONSECUTIVE WITH
                         ALL PREVIOUS SANCTIONS
         LP PHONE   / 120 DAYS / CS
         COMP:    LAW:   120 DAYS LOSS OF PHONE TO RUN CONSECUTIVE WITH
                         ALL PREVIOUS SANCTIONS
    201  FIGHTING WITH ANOTHER PERSON - FREQ: 1
         DIS GCT    / 10 DAYS / CS
         COMP:000 LAW:   DISALLOWED 10 DAYS OF GOOD CONDUCT TIME
         DS         / 15 DAYS / CS
         COMP:    LAW:   15 DAYS DISCIPLINARY SEGREGATION BEGINNING ON
                         05-12-2006 AND ENDING ON 05-27-06
         LP COMM    / 120 DAYS / CS
         COMP:    LAW:   120 DAYS LOSS OF COMMISSARY TO RUN CONSECUTIVE
                         WITH PREVIOUS SANCTIONS




G0005     TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

Exhibit 1
Attach. J, p. 10

```
CAADC  542*22 *              SENTENCE MONITORING            *      04-02-2015
PAGE 001 OF 001 *              GOOD TIME DATA               *      14:09:12
                              AS OF  04-02-2015

REGNO...: 09683-029   NAME: LABARGE, BRANDEN MAURICE
ARS 1...: CAA A-DES                                   PLRA
COMPUTATION NUMBER..: 020                      PRT   ACT DT:
LAST UPDATED: DATE.: 12-18-2014         FACL..: DSC    CALC: AUTOMATIC
UNIT................: F2 UNIT            QUARTERS............: Z06-244UAD
DATE COMP BEGINS...: 01-05-2007         COMP STATUS.........: COMPLETE
TOTAL JAIL CREDIT..: 381                TOTAL INOP TIME.....: 0
CURRENT REL DT......: 03-22-2037 SUN    EXPIRES FULL TERM DT: 12-19-2037
PROJ SATISFACT DT...: 05-10-2034 WED    PROJ SATISF METHOD..: GCT REL
ACTUAL SATISFACT DT.:                   ACTUAL SATISF METHOD:
DAYS REMAINING......:                   FINAL PUBLC LAW DAYS:
GED PART STATUS.....:                   DEPORT ORDER DATED..:

-------------------------GOOD CONDUCT TIME AMOUNTS-------------------------
```

| START DATE | STOP DATE | MAX POSSIBLE TO DIS FFT | | ACTUAL TOTALS DIS FFT | | VESTED AMOUNT | VESTED DATE |
|---|---|---|---|---|---|---|---|
| 12-20-2005 | 12-19-2006 | 54 | 2 | 52 | | | |
| 12-20-2006 | 12-19-2007 | 54 | 56 | | | | |
| 12-20-2007 | 12-19-2008 | 54 | 56 | 109 | | | |
| 12-20-2008 | 12-19-2009 | 54 | 110 | | | | |
| 12-20-2009 | 12-19-2010 | 54 | 164 | | | | |
| 12-20-2010 | 12-19-2011 | 54 | 191 | 27 | | | |
| 12-20-2011 | 12-19-2012 | 54 | 191 | 75 | | | |
| 12-20-2012 | 12-19-2013 | 54 | 245 | | | | |
| 12-20-2013 | 12-19-2014 | 54 | 272 | 27 | | | |
| 12-20-2014 | 12-19-2015 | 54 | | | | | |
| 12-20-2015 | 12-19-2016 | 54 | | | | | |
| 12-20-2016 | 12-19-2017 | 54 | | | | | |
| 12-20-2017 | 12-19-2018 | 54 | | | | | |
| 12-20-2018 | 12-19-2019 | 54 | | | | | |
| 12-20-2019 | 12-19-2020 | 54 | | | | | |
| 12-20-2020 | 12-19-2021 | 54 | | | | | |
| 12-20-2021 | 12-19-2022 | 54 | | | | | |
| 12-20-2022 | 12-19-2023 | 54 | | | | | |
| 12-20-2023 | 12-19-2024 | 54 | | | | | |
| 12-20-2024 | 12-19-2025 | 54 | | | | | |
| 12-20-2025 | 12-19-2026 | 54 | | | | | |
| 12-20-2026 | 12-19-2027 | 54 | | | | | |
| 12-20-2027 | 12-19-2028 | 54 | | | | | |
| 12-20-2028 | 12-19-2029 | 54 | | | | | |
| 12-20-2029 | 12-19-2030 | 54 | | | | | |
| 12-20-2030 | 12-19-2031 | 54 | | | | | |
| 12-20-2031 | 12-19-2032 | 54 | | | | | |
| 12-20-2032 | 12-19-2033 | 54 | | | | | |
| 12-20-2033 | 05-10-2034 | 21 | | | | | |

```
        TOTAL EARNED AMOUNT.........................................:    272
        TOTAL EARNED AND PROJECTED AMOUNT...........................:   1319

G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

Exhibit 1
Attach. J, p. 11

## Inmate Inquiry

| | | | |
|---|---|---|---|
| Inmate Reg #: | 09683029 | Current Institution: | Canaan USP |
| Inmate Name: | LABARGE, BRANDEN | Housing Unit: | CAA-Z-A |
| Report Date: | 03/23/2015 | Living Quarters: | Z02-211LDS |
| Report Time: | 9:07:46 AM | | |

General Information  |  Account Balances  |  Commissary History  |  Commissary Restrictions  |  Comments

Administrative Hold Indicator:   No
No Power of Attorney:   No
Never Waive NSF Fee:   No
Max Allowed Deduction %:   100
PIN:   3600
PAC #:   338930417
Revalidation Date:
FRP Participation Status:   Participating
Arrived From:   OKL
Transferred To:
Account Creation Date:   7/11/2006
Local Account Activation Date:   1/14/2012 4:09:46 AM

Sort Codes:
Last Account Update:   3/22/2015 3:1:35 AM
Account Status:   Active
Phone Balance:   $0.12

Target Pre-Release Account Balance:   $0.00
Pre-Release Deduction %:   0%
Income Categories to Deduct From:   Payroll     Outside Source

| Quarterly | $25.00 | 0% |
|---|---|---|

| Account Balance: | $0.00 |
|---|---|
| Pre-Release Balance: | $0.00 |
| Debt Encumbrance: | $0.00 |
| SPO Encumbrance: | $0.00 |
| Other Encumbrances: | $0.00 |

Exhibit 1

Outstanding Negotiable Instruments:   $0.00
Administrative Hold Balance:   $0.00
Available Balance:   $0.00
National 6 Months Deposits:   $349.30
National 6 Months Withdrawals:   $256.20
Available funds to be considered for IFRP Payments:   $399.30
National 6 Months Avg Daily Balance:   $19.44
Local Max. Balance - Prev. 30 Days:   $50.00
Average Balance - Prev. 30 Days:   $1.74

Available Purchases:   $0.00
YTD Purchases:   $539.10
Last Sales Date:   3/4/2015 6:56:52 AM

SPO's this Month:   0
SPO's this Quarter:   $0.00

Spending Limit Override:   No
Weekly Revalidation:   No
Bi-Weekly Revalidation:   No
Spending Limit:   $290.00
Expended Spending Limit:   $0.00
Remaining Spending Limit:   $290.00

Restricted Spending Limit:   $0.00
Restricted Expended Amount:   $0.00
Restricted Remaining Spending Limit:   $0.00
Restriction Start Date:   N/A
Restriction End Date:   N/A

| Type | Start Date | End Date | Active |
|------|-----------|----------|--------|

Exhibit 1
3/23/2015

**Comments**

Comments:

Exhibit 1
Attach. J, p. 14

BRANDEN LABARGE V C. MAIORANA, et. al

1:CV-16-1046

## ATTACHMENT K

**Copy of video surveillance from March 21, 2015 incident, submitted under seal**

**Exhibit 1**
**Attach K, p. 1**

U. S. Department of Justice

*Request for Administrative Remedy, Part B - Response*

Federal Bureau of Prisons
USP, Canaan, Pennsylvania

*Name*: Labarge, Branden
*Reg. No.*: 09683-029
*Admin. Remedy No.*:  817458-F1

This is in response to your Request for Administrative Remedy dated April 6, 2015, which was received in this office on April 14, 2015.  You claim in your Administrative Remedy that on March 21, 2015, staff used excessive force on you in the Special Housing Unit (SHU).

A review of your claim was conducted by the SIA.  The review revealed video recordings of the incident and statements from staff clearly show that you attempted to pull away from staff's control while being escorted to a cell in SHU.  Additionally, an After Action Review determined the actions taken by staff to control you were reasonable and appropriate.  Therefore, your allegation of excessive use of force is not substantiated.

This response is for informational purposes only.  In the event you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of the date of this response by submitting a BP-230(10) to the Regional Director, Federal Bureau of Prisons, Northeast Regional Office, U.S. Customs House, 2nd and Chestnut Street, Philadelphia, PA 19106.

_____                            _____
C. Maiorana, Warden                                            Date     5/7/15

Exhibit 1
Attach L, p. 1

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: LaBarge, Branden     09683-029     SHU     USP-CANAAN
LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

Part A– INMATE REQUEST *Sensitive BP-9* This complaint is of a sensitive nature, e.g. a BP-8 would be impeded/thwarted and/or may bring about retaliation amounting to obstruction by prison staff by/thru threats or intimidation, and as such is directed directly to Warden Mariana (Sp?) here at U.S.P. Canaan. This complaint is brought as concerns a violation of my Eighth Amendment protections against cruel and unusual punishment via misuse of force.

    First and foremost, as concerns this complaint and as prison records will show, especially in conciousness of prison inmate politics, I am a white caucasian, whom has always been –as I live and eat with the white population and I do not belong to an S.T.G.
    On 3-21-15 at approx. 2:15 pm, while showering in my cell B-Upper 220 SHU, in which I was housed with inmate Justin O'Brien, C.O. Grizzanti came by and told me to pack my property cause I was moving, no reason given. Approx. ½ hour later, I was then taken from B-Upper 220 to stand in front

4-6-15     *Cont. Pages Attached*     B. LaBarge
DATE     –2 Pages–     SIGNATURE OF REQUESTER

**Part B– RESPONSE**

RECEIVED 4-14-15

DATE     WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE     CASE NUMBER: 817458-F

    CASE NUMBER: 817458-F

**Part C– RECEIPT**

Return to: _____
    LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

DATE     RECIPIENT'S SIGNATURE (STAFF MEMBER)

**Exhibit 1**
BP-229(13)
APRIL 1982

USP LVN     PRINTED ON RECYCLED PAPER     Attach L, 2

CONTINUATION PAGE #1 of Sensitive BP-9 of Branden LaBarge

C-Upper 249 by C.O. Grizzanti and another C.O. The officers then told one of the inmates in cell 249 to pack up.

While standing in front of cell 249, inmate Burke (sp?), the inmate whom was staying in 249 and with whom the attempt to move me in with was being made, came to the window, looked at me and shook his head, saying to Grizzanti: "I'm on Black time. I'm a blood."

Though inmate Burke is physically white (caucasian), he lives with and eats with Blacks — and further belongs to a S.T.G. ("Blood"). Instantly, I looked to a couple of other cells in which were housed inmates I know and said: "What's up with this guy?" A reply came: "He's not white (he don't run with whites)."

At this point I realized an attempt was being made to place my life in danger. I turned to C.O. Grizzanti and asked: "You trying to set me up? You know I can't live with him." C.O. Grizzanti looked preturbed, but eventually led me down to the holding cell. On the way to the holding cell, I told C.O. Grizzanti: "Come on, you know I can't live with him." C.O. Grizzanti replied: "It don't matter. He's gotta come out."

From the holding cell, I then watched officers first escort Burke's cellie to a cell across from me, and then inmate Burke to the LT's office in the 5th). After about 5-10 minutes, Burke was escorted right by me and Officer Getz came to get me, while walking up the stairs, following inmate Burke's escort, I realized another attempt was being made to place my life in danger by placing me in Burke's cell.

Standing in front of C-Upper at the Grill, with inmate Burke and his escort in front of me, I turned to C.O. Getz and told him: "You know I can't live with him." C.O. Getz just smiled and said: "Your going in." I then asked inmate Burke: "What's up. You run Black right? Blood?" Burke said: "Yeah, I told them." I turned to C.O. Getz and said: "Why you setting me up, man?" Getz said: "Come on." and nudged me. I then said to Getz: "I can't live with him." Getz said: "You refusing?" I said: "Yeah." C.O. Getz then nudged me to the left while saying: "Come

Exhibit 1
Attach L, p. 3

CONTINUATION PAGE #2 of Sensitive BP-9 of Brandon LaBeige

With C.O. Getz nudging me to the left and saying "Come on", I certainly thought he was taking me back to the holding cell; however, with Getz's prompting and my moving to the left with his nudge, he then viciously slammed me to the ground. I screamed in pain as my head slammed on the ground and I was knocked senseless. My arm was bent cruelly behind my back and my face was lying in a pool of blood. I heard other officers respond and when the Lt. asked what happened, Getz then lied and said: "He turned an spit on me." I then yelled: "Bullshit."

When pulled to my feet I did yell: "All officers and staff present, I was just assaulted by staff and I want the video tape preserved."

I was then taken to the holding cell, then to get medical examined, and then placed in 211 A-Upper by myself.

I was placed in danger when the attempt to put me in a cell with Burke was made; thus, I refused my cell assignment with proper reason — contrary to the I.R.; Officer Getz violated my Eighth Amendment protections against Cruel and Unusual Punishment via misuse of Force; Officer Getz then lied, first saying I spit on him, then writing the IR under the guise that I threatened him (only because that is the only viable excuse to use the force he did).

I would like all camera footage preserved, O.I.A (office of Internal Affairs) and O.I.G (office of Inspector General) contacted — all to prevent retaliation and to preclude possible litigation in court. Camera footage along with corroborating witnesses (staff and otherwise) will prove the veracity of my claims. The IR I received should be expunged, Officer Getz should be fired, and I should be compensated for the injury done to my jaw and the pain and suffering I endure, all in violation of my constitutional rights.

Exhibit 1
Attach L, p. 4

✳ Sensitive BP-9 ✳

To: Warden C. Maiorana

✳ Sensitive BP-9 ✳

Exhibit 1
Attach L, p. 5

*Sensitive RP-9*

To: Warden C. Maiorana

* Sensitive RP-9 *

Exhibit 1
Attach L, p. 6



GOVERNMENT
EXHIBIT
2

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRANDEN LABARGE,                )
                                )
        Plaintiff               )      CIVIL ACTION NO. 1:16-CV-1046
                                )
    vs.                         )
                                )
C. MAIORANA, et al.,            )
                                )
        Defendants              )

## DECLARATION OF PATRICIA BURGERHOFF

I, Patricia Burgerhoff, hereby state:

1.   I am currently employed by the Federal Bureau of Prisons ("BOP") as a Register Nurse at the United States Penitentiary ("USP") Canaan, located in Waymart, Pennsylvania. I have been employed by the BOP since September April 16, 2007.

2.   I certify the documents attached to this declaration:
     a. are true and correct copies of records maintained by the BOP;
     b. were created at or near the time of the occurrence of the matters reflected therein by someone with knowledge; and
     c. were made by the BOP as a regular practice.
     I am a custodian of the documents or am otherwise qualified to execute this certification, pursuant to Fed. R. Evid. 803(6) and 902(11).

3.   I assert that I was the completed a medical assessed on inmate Labarge following a use of force incident on March 21, 2015 which occurred in the Special Housing Unit ("SHU") at USP Canaan.

4.   Provided as <u>Attachment A</u> is a copy of inmate Labarge's March 21, 2015 Health Services Clinical Encounter note.

5.   A review of that medical report provides that inmate Labarge described moderate pain and found on examination to have a small cut on the center of his chin following the March 21, 2015 incident. It was also specifically noted in that report that inmate Labarge had a pre-existing injury to his left eyebrow resulting from a previous and unrelated trauma.

6.   During the March 21, 2015 examination inmate Labarge denied any blurred vision, nausea, vomiting and/or or shortness of breath. He was able to speak in full sentences without any noted issues. Other than a small and shallow cut documented to his chin he was found to be alert and oriented to his surroundings.

7.   The small cut on inmate Labarge's chin was cleaned and a sterile dressing was applied.

8.   I have reviewed my March 21, 2015 medical note and believe that I correctly and accurately documented inmate Labarge's physical condition following the March 21, 2015 incident. I do not recall inmate Labarge sustaining any additional injuries in the March 21, 2015 incident which were not included in my medical note, nor do I recall him asserting and/or treating him for any injury to his hands or fingers.

9.   The medical records also provide that inmate Labarge received no additional follow-up care, nor did he submit any sick call requests immediately following the March 21, 2015 incident while he remained at USP Canaan after the March 21, 2015 incident.

10.  Inmate Labarge remained at USP Canaan following the incident until his transfer to USP McCreary located in Pine Knot, Kentucky on April 27, 2015. The medical records reveal that inmate Labarge made no complaints of any symptomatic conditions to health services at USP McCreary when he arrived there during his medical intake screening at this institution. See Attachment B; May 20, 2015, Health Services Health Screen.

11.  The medical records indicate that inmate Labarge next complained about his alleged right finger injury at an examination occurring on October 14, 2015. At this evaluation while he provided a history of the March 21, 2015 incident he is found on examination to be asymptomatic. See Attachment C; October 14, 2015 Kentucky One Health, Medical Encounter Note.

I hereby state under penalty of perjury pursuant to the provisions of 28 U.S.C. § 1746 that the above is accurate to the best of my knowledge.

Patricia Burgerhoff
Registered Nurse
USP Canaan

11/14/16
Date

# Bureau of Prisons
## Health Services
## Clinical Encounter

| | | | |
|---|---|---|---|
| Inmate Name: **LABARGE, BRANDEN MAURICE** | | | Reg #: 09683-029 |
| Date of Birth: | Sex: M | Race: WHITE | Facility: CAA |
| Encounter Date: 03/21/2015 15:55 | Provider: Burgerhoff, Patricia RN | | Unit: Z04 |

Injury Assessment-Not Work Related encounter performed at Special Housing Unit.

**SUBJECTIVE:**

    **INJURY   1**    **Provider:**   Burgerhoff, Patricia RN

        **Date of Injury:**    03/21/2015 15:55    **Date Reported for Treatment:**    03/21/2015 16:47
        **Work Related:**    No    **Work Assignment:**    SHU UNASSG
        **Pain Location:**    Head
        **Pain Scale:**    5
        **Pain Qualities:**  Throbbing
        **Where Did Injury Happen (Be specific as to location):**
            SHU upper tier near upper C range.
        **Cause of Injury (Inmate's Statement of how injury occurred):**
            Immediate Use of Force.
        **Symptoms (as reported by inmate):**
            "Chin is bleeding".

**ROS:**
    **GI**
        **General**
            No: Nausea, Vomiting

**OBJECTIVE:**
**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 03/21/2015 | 16:47 CAA | 97.9 | 36.6 | Tympanic | Burgerhoff, Patricia RN |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 03/21/2015 | 16:47 CAA | 68 | Radial | Regular | Burgerhoff, Patricia RN |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 03/21/2015 | 16:47 CAA | 16 | Burgerhoff, Patricia RN |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 03/21/2015 | 16:47 CAA | 122/82 | Left Arm | Standing | Adult-large | Burgerhoff, Patricia RN |

**SaO2:**

| Date | Time | Value(%) | Air | Provider |
|---|---|---|---|---|
| 03/21/2015 | 16:47 CAA | 99 | Room Air | Burgerhoff, Patricia RN |

**Exam:**
    **General**
        **Affect**
            Yes: Pleasant, Cooperative

**Exhibit 2**
**Attach. A, p. 1**

| | | |
|---|---|---|
| Inmate Name:  LABARGE, BRANDEN MAURICE | | Reg #:   09683-029 |
| Date of Birth: | Sex:   M   Race:  WHITE | Facility:  CAA |
| Encounter Date: 03/21/2015 15:55 | Provider:  Burgerhoff, Patricia RN | Unit:   Z04 |

## Exam:

### Appearance
Yes: Appears Well, Alert and Oriented x 3

No: Appears Distressed, Unconscious, Lethargic, Dyspneic, Appears in Pain, Writhing in Pain, Pale, Diaphoretic

## Skin
### General
Yes: Within Normal Limits, Dry, Warmth, Erythema

No: Skin Intact, Clammy, Cool, Diaphoretic, Tenderness

### Trauma
Yes: Swelling, Ecchymosis

No: Deformity, Abrasion

New injury: 1/2 cm cut shallow to center lower chin.

Old injuries: Left orbital area with mild swelling, bruising. 1cm cut left eyebrow area, scabbed.

## Eyes
### General
Yes: PERRLA

### Periorbital/Orbital/Lids
Yes: Swelling L, Trauma L, Ecchymosis L

Old trauma to left orbital area, mild swelling, bruising purple several days old.

## Nose
### General
Yes: Nares Patent, Posterior Epistaxis

No: Deformity

Dried blood noted left nare. No deformity noted.

## Neck
### General
Yes: Within Normal Limits, Supple

No: Trauma

## Pulmonary
### Observation/Inspection
Yes: Within Normal Limits

No: Respiratory Distress

### Auscultation
Yes: Clear to Auscultation

## Cardiovascular
### Observation
Yes: Within Normal Limits, Normal Rate, Regular Rhythm

## Peripheral Vascular
### Arms
Yes: Radial Pulse Normal, Capillary Refill Normal

### Legs
Yes: Dorsalis Pedis Normal, Capillary Refill Normal

## Musculoskeletal
### Gait
Yes: Normal Gait

## ASSESSMENT:

Exhibit 2
Attach. A, p. 2

| Inmate Name: LABARGE, BRANDEN MAURICE | | | Reg #: 09683-029 |
|---|---|---|---|
| Date of Birth: ▓▓▓▓ | Sex: M  Race: WHITE | | Facility: CAA |
| Encounter Date: 03/21/2015 15:55 | Provider: Burgerhoff, Patricia RN | | Unit: Z04 |

Cut(s) and/or Abrasion(s)
AA Ox3 ambulatory steady gait. Complains of 5/10 throbbing headache. Denies any blurred vision. Denies any n/v or SOB. Lungs clear bilaterally. Able to speak in full sentences without being winded. New injury note: Small 1/2 cm shallow cut noted to middle lower chin. Cleansed with sterile water applied non-adhere pad and secured with cover-roll stretch. Old injuries: Left orbital area with purple bruising and mild swelling, several days old. Small 1 cm cut near left eyebrow area, scabbed, signs of healing. No other injuries noted. NAD. +CCSM x 4 extremities, +distal pulses. Restraints do not obstruct breathing or circulation. NAD.

**PLAN:**

**Disposition:**
Follow-up at Sick Call as Needed
Return Immediately if Condition Worsens

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 03/21/2015 | Counseling | Access to Care | Burgerhoff, Patricia | Verbalizes Understanding |

**Copay Required:** No          **Cosign Required:** Yes
**Telephone/Verbal Order:** No

Completed by Burgerhoff, Patricia RN on 03/21/2015 17:52
Requested to be cosigned by Mowatt, S. MD.
Cosign documentation will be displayed on the following page.

# Bureau of Prisons
# Health Services
# Health Screen

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | LABARGE, BRANDEN MAURICE | | | Reg #: | 09683-029 |
| Date of Birth: | | Sex: | M | Race: | WHITE |
| Encounter Date: | 05/20/2015 17:53 | Provider: | Stephens, Neil RN | Facility: | MCR |

**Seizures:**      Denied

**Diabetes:**      Denied

**Cardiovascular:**      Denied

**CVA:**      Denied

**Hypertension:**      Denied

**Respiratory:**      Denied

**Sickle Cell Anemia:**      Denied

**Carcinoma/Lymphoma:**      Denied

     **Comments:**

**Allergies:**      Denied

**Tuberculosis:**

     **Hx of Previous Disease:** No
     **Blood-tinged Sputum:** No
     **Night Sweats:** No
     **Weight Loss:** No
     **Fever:** No
     **Cough:** No
     **Comments:**

**Infectious Disease Risk Factors:**

     **IV Drug Use:** No
     **IV Drug Use Needles:**
     **Sexual Partner IV Drug Use:** No
     **Sexual Partner IV Drug Use Needles:**
     **Female Sexual Partners (Last 5 Yrs):** None
     **Male Sexual Partners (Last 5 Yrs):** None
     **Condom Use:** Never
     **Sexual Contact With HIV+ Individual:** No
     **Blood Product Transfusion:** No
     **Travel Outside US:** No
     **Tattoos:** Yes
     **Comments:**

**HIV History:**      Denied

**Hepatitis:**

| Hepatitis Type | Age of Onset | When Diagnosed | Jaundice | Comments |
|---|---|---|---|---|
| C | Adult (41-50 Years) | 2008 | No | |

Exhibit 2
Attach. B, p. 1

| | | | | |
|---|---|---|---|---|
| Inmate Name: | LABARGE, BRANDEN MAURICE | | Reg #: | 09683-029 |
| Date of Birth: | ▇▇▇▇▇▇ | Sex: M | Race: | WHITE |
| Encounter Date: | 05/20/2015 17:53 | Provider: Stephens, Neil RN | Facility: | MCR |

**Other Infectious Diseases:**          Denied

**Abuse History:** Denied

   **Physical:** No

   **Emotional:** No

   **Sexual:** No

   **Comments:** denies

**Mental Health:**

   **Level of Consciousness:** Alert and Oriented

   **Psychomotor Activity:** Normal

   **General Appearance:** Normal

   **Behavior:** Cooperative

   **Mood:** Appropriate to Content

   **Thought Process:** Goal Directed

   **Thought Content:** Normal

   **Hx of Mental Health Treatment:** None

   **Hx of Head Injury:** None

   **Current Mental Health Treatment:** No

   **Current Mental Health Complaint:** No

   **Hx of Loss of Consciousness:** No

   **Hx of Hearing Voices:** No

   **Past History of Suicide Attempt:** No

   **Current Suicide Ideation:** No

   **Suicide Prevention Initiated:** No

   **Comments:**

**Substance Use History:** Denied

**Current Painful Condition:**          Denied

**Other Health Issues:**

   **Current Medical Conditions:**

   **Other Current Treatments:**

**Pregnant:**          N/A

**Dental Condition:** Denied

Exhibit 2
Attach. B, p. 2

| Inmate Name: | LABARGE, BRANDEN MAURICE | | | Reg #: | 09683-029 |
|---|---|---|---|---|---|
| Date of Birth: | | Sex: | M | Race: | WHITE |
| Encounter Date: 05/20/2015 17:53 | | Provider: | Stephens, Neil RN | Facility: | MCR |

**Observations:**

**Draining Skin Lesions:** No

**Signs of Lice:** No

**Signs of Scabies:** No

**Signs of Recent Trauma:** No

**Recent Tattoos:** No

**Needle Marks:** No

**Signs of Rash:** No

**Open Sores:** No

**Wounds:** No

**Body Deformities:** No

**Tremors:** No

**Sweating:** No

**Comments:**

**Prosthetic Devices/Equipment:** Denied

**Potential Items For Follow-up:**

<u>Item</u>

Tattoos

Hepatitis - C

PPD Administration Not Performed

**Health Problems Newly Identified During This Encounter:**

| <u>Type</u> | <u>Health Problem</u> | <u>Status</u> |
|---|---|---|

Instructed inmate how to obtain medical, dental, and mental health care.

**Copay Required:** No          **Cosign Required:** No

**Telephone/Verbal Order:** No

Completed by Stephens, Neil RN on 05/20/2015 17:55

Exhibit 2
Attach. B, p. 3

Oct. 20. 2015 12:59PM                                                    No. 7411    P. 2/3


KentuckyOne Health                          UOP McCREARY

Patrice Beliveau, MD
Jean-Maurice Page, MD
Collin E. Ball, DPM
Alan Oster, MD
Kim Cesario, APRN
Lauren Snow, APRN
Meredith Moses, PA-C
Stuart Mack, PA-C
Jay N. Shah, MD

Orthopedic Associates
*(formerly: Premier Orthopedic and Sports)*
160 London Mountain View Drive
London, KY 40741
P 606.864.0770
F 606.884.1461
KentuckyOneHealth.org

## HISTORY AND PHYSICAL

RE: Labarge, Brenden # 09683-029
DOB:
DATE: 10/14/2015

### CHIEF COMPLAINT
Right long finger PIP pain.

### HISTORY OF PRESENT ILLNESS
Brenden Labarge is a 45-year-old male, who presents to the clinic for evaluation of right long finger pain. He localizes his pain in the radial and ulnar aspects of his PIP. Date of injury was March 21, 2015. He currently rates the pain as a 7/10. He indicates the pain does not affect his activities of daily living. The patient's injury occurred when he had handcuffs on and was taken down. He tried to brace himself. All weight went on his hand. His symptoms are pain, minimal swelling and stiffness.

### PAST MEDICAL HISTORY
Significant for hepatitis C.

### PAST SURGICAL HISTORY
Left knee surgeries x2.

### CURRENT MEDICATIONS
Gabapentin.

### DRUG ALLERGIES
No known drug allergies.

### SOCIAL HISTORY
The patient is single and currently incarcerated.

### FAMILY MEDICAL HISTORY
Noncontributory.

### REVIEW OF SYSTEMS
Denies any fever, chills, nausea, or vomiting. Rest of the review of systems is otherwise negative.

### PHYSICAL EXAM
VITAL SIGNS: Pulse is 52, blood pressure is 155/94, weight is 236 pounds, and height is 5 feet 10 inches.
GENERAL: A well-developed male in no acute distress. Alert and oriented x3.
HEENT: Normocephalic and atraumatic.
NECK: Supple without lymphadenopathy.
CHEST: Normal respiratory effort with symmetric chest rise.

Exhibit 2
Attach. C, p. 1

Page 2
Labarge, Brenden

HEART:  Regular rate and rhythm.
ABDOMEN:  Soft, nontender, and nondistended.
NEUROLOGIC:  Cranial nerves II through XII grossly intact.
MUSCULOSKELETAL:  Examination of the right wrist and hand shows painless range of motion of his right wrist.  He is able to fully extend and flex.  He does not have any pain with thumb range of motion as well.  He has positive EPL, FPL, EDC, FDP, and interossei.  Sensation is intact to light touch in the median, radial and ulnar nerve distributions.  Capillary refill is less than 2 seconds.  Examination of the long finger does not show any significant edema.  He is able to fully flex and extend his PIP joint.  He does report some radial-sided pain with palpation.  The flexors and extensors to that digit do not appear to be affected.

RADIOGRAPHS
Three views of the right long finger reviewed.  Images do not show any acute fractures or dislocations.

IMPRESSION
Right long finger pain.

PLAN
I explained the findings to the patient.  He has minimal symptoms on exam here today.  His x-rays do not show any fractures.  He was told that he had a nonunion of a bone in his long finger.  I reviewed his previous notes from the provider who referred him to my clinic.  Those notes state there is a nonunion of the scaphoid.  The patient does not report any symptoms in the scaphoid.  He had a previous surgery where there was bone grafting near his wrist, which sounds like treatment for his previous scaphoid fracture.  Once again, he is asymptomatic at his wrist.  He has minimal symptoms of his right long finger.  His x-rays do not show any bony abnormalities.  There may be early arthritis setting in the area.  I advised using NSAID for pain control.  If he has any further difficulties with that hand or long finger, he may see a hand surgeon.  There is no need for followup in my clinic.

Jay N. Shah, M.D.
JNS/NC/PCJ

Exhibit 2
Attach. C, p. 2

**Bureau of Prisons**
**Health Services**
**Cosign/Review**

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | LABARGE, BRANDEN MAURICE | | | Reg #: | 09683-029 |
| Date of Birth: | ████████ | Sex: | M | Race: | WHITE |
| Scanned Date: | 11/03/2015 11:22 | | | Facility: | MCR |

**Reviewed by Hardy, William MD on 11/23/2015 10:53.**

Exhibit 2
Attach. C, p. 3

GOVERNMENT
EXHIBIT
3

CARDELS 800-783-0399

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRANDEN LABARGE,        )
                          )
      Plaintiff        )      **CIVIL ACTION NO. 1:16-CV-1046**
                          )
      vs.             )
                          )
C. MAIORANA, et al.,      )
                          )
      Defendants     )

### DECLARATION OF CAPTAIN RICHARD HOLLINGSWORTH

1.      I am presently employed as the Captain at the United Sates Penitentiary, ("USP") Canaan located in Waymart, Pennsylvania. I have been employed by the Federal Bureau of Prisons ("BOP") since 2000. As a part of my duties and responsibilities, I have access to inmates' records, electronic data maintained on the BOP's SENTRY computer system, Administrative Remedy data, and BOP Program Statements.

2.      My entire career with the BOP has involved supervising inmates at various federal facilities. I am extremely familiar with every aspect related to the housing of inmates at a federal penitentiary, including the challenges associated with the daily operations of a high security penitentiary as well as the procedures and policies related to the Special Housing Units ("SHU") at USP Canaan.

3.      As the Captain at USP Canaan I am responsible for supervising staff members working in the SHU, ensuring that proper security measures are in place and followed by staff as well as making sure that the conditions of confinement for the inmates housed in the SHU are appropriate according to federal law and existing BOP Policies.

4.      Every inmate confined in the SHU at USP Canaan is given an opportunity for recreation as proscribed by BOP policy.

5.      As a result of the additional security measures, the size of the SHU as well as the amount of inmates housed in this unit, the recreational periods offered to the inmates are routinely declined by inmates that chose not to participate in recreation or those who are not ready to be escorted to recreation once informed of their opportunity to participate in recreation.

6.      Staff members in the SHU at USP Canaan are not permitted to prevent an inmate, who is present and prepared at the appropriate time, from participating in recreation.

7.      Additionally all the inmates housed in the SHU at USP Canaan are provided with adequate measures to maintain their health and wellbeing as proscribed by federal law.

8.      Inmates housed in the SHU as a result of disciplinary segregation are restricted from possessing certain items to ensure for the safety and security of the institution.  Inmates housed as a result of disciplinary segregation have their personal property impounded with exception to a limited amount of reading, writing and religious materials for security reasons.  While housed in the SHU these inmates retain access to legal and personal mail, institutional programing, health services as well as the administrative remedies program.


        I declare under penalty of perjury pursuant to 28, United States Code, Section 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this _4th_ day of August, 2016.

                                        Richard Hollingsworth
                                        Captain
                                        USP Canaan



**U.S. Department of Justice**
Federal Bureau of Prisons

PROGRAM STATEMENT
OPI:            CPD/CSB
NUMBER:         5270.10
DATE:           July 29, 2011
EFFECTIVE DATE: August 1, 2011

# Special Housing Units

/s/
*Approved*: Thomas R. Kane
Acting Director, Federal Bureau of Prisons

## 1. PURPOSE AND SCOPE

### § 541.20 Purpose.

**This subpart describes the Federal Bureau of Prisons' (Bureau) operation of special housing units (SHU) at Bureau institutions. The Bureau's operation of SHUs is authorized by 18 U.S.C. 4042(a)(2) and (3).**

a. **Program Objectives**. The expected results of this program are:

- A safe and orderly environment will be provided for inmates and staff.
- Living conditions for inmates in disciplinary segregation and administrative detention will meet or exceed applicable standards.
- Accurate and complete records will be maintained on conditions and events in special housing units.

b. **Summary of Changes**

*Policy Rescinded*
P5270.08      Inmate Discipline and Special Housing Units (12/4/09)

The former Program Statement **Inmate Discipline and Special Housing Units** is being reissued as two separate Program Statements.

**Federal Regulations from 28 CFR are shown in this type.**
Implementing instructions are shown in this type.

**Exhibit 3**
**Attach. A, p. 1**

Removes the language requiring staff in a control unit to adhere to the 90-day limit for an inmate's placement in post-disciplinary detention.

Provides guidance for post disciplinary detention in excess of 90 days and every additional 60 days.

## 2. SPECIAL HOUSING UNITS (SHUS)

### § 541.21  Special Housing Units (SHUs).

**Special Housing Units (SHUs) are housing units in Bureau institutions where inmates are securely separated from the general inmate population, and may be housed either alone or with other inmates.  Special housing units help ensure the safety, security, and orderly operation of correctional facilities, and protect the public, by providing alternative housing assignments for inmates removed from the general population.**

For inmates with suspected or confirmed contagious diseases, refer to the Program Statements **Intake Screening, Infectious Disease Management**, and **Patient Care**, and, when applicable, the Pandemic Influenza Plan.

Alternative segregation housing arrangements outside the Special Housing Unit itself must be proposed by the Warden to the Regional Director, and ultimately approved by the Assistant Director, Correctional Programs Division, before activation.  Alternative segregation housing of this type will only be approved as SHU overflow for inmates in administrative detention or disciplinary segregation status.  Operation of such alternative segregation housing requires compliance with all Bureau rules, policies, staffing, and post orders for operating Special Housing Units.

## 3. STATUS WHEN PLACED IN THE SHU

### § 541.22  Status when placed in the SHU.

**When placed in the SHU, you are either in administrative detention status or disciplinary segregation status.**

**(a) *Administrative detention status.*  Administrative detention status is an administrative status which removes you from the general population when necessary to ensure the safety, security, and orderly operation of correctional facilities, or protect the public.  Administrative detention status is non-punitive, and can occur for a variety of reasons.**

The Warden may impose temporarily more restrictive conditions on an inmate (which may be in an area ordinarily set aside for disciplinary segregation and therefore requires the withdrawal of

**Exhibit 3**
**Attach. A, p. 2**

privileges ordinarily afforded in administrative detention status, until a hearing before the DHO can be held) who:

- Is causing a serious disruption (threatening life, serious bodily harm, or property) in administrative detention;
- Cannot be controlled within the physical confines of administrative detention; and
- Upon advice of qualified health personnel, does not require confinement in the institution hospital if the institution has one for mental or physical treatment, or who would ordinarily be housed in the institution hospital for mental or physical treatment, but who cannot safely be housed there because the hospital does not have a room or cell with adequate security provisions.

Inmate confined under these more restrictive conditions must have their status reviewed and fully documented on a new BP-A0321 every 5 days.

The Warden may delegate this authority no further than to the official in charge of the institution when the move is necessary.

A fully documented report *Special Housing Unit - Temporary Restrictive Housing Order* (BP-A0321) is maintained in the Inmate Central File.

**(b) *Disciplinary segregation status.* Disciplinary segregation status is a punitive status imposed only by a Discipline Hearing Officer (DHO) as a sanction for committing a prohibited act(s).**

4. **ADMINISTRATIVE DETENTION STATUS**

**§ 541.23  Administrative detention status.**

**You may be placed in administrative detention status for the following reasons:**

**(a) *Pending Classification or Reclassification.* You are a new commitment pending classification or under review for Reclassification.**

This includes newly arrived inmates from the Bus, Airlift, and U.S. Marshals Service.

**(b) *Holdover Status.* You are in holdover status during transfer to a designated institution or other destination.**

**(c) *Removal from general population.* Your presence in the general population poses a threat to life, property, self, staff, other inmates, the public, or to the security or orderly running of the institution and:**

**Exhibit 3**
**Attach. A, p. 3**

**(1)** *Investigation.* **You are under investigation or awaiting a hearing for possibly violating a Bureau regulation or criminal law;**

**(2)** *Transfer.* **You are pending transfer to another institution or location;**

**(3)** *Protection cases.* **You requested, or staff determined you need, administrative detention status for your own protection; or**

**(4)** *Post-disciplinary detention.* **You are ending confinement in disciplinary segregation status, and your return to the general population would threaten the safety, security, and orderly operation of a correctional facility, or public safety.**

If an inmate is terminating confinement in disciplinary segregation and staff determine placement in general population is not prudent, the inmate may be placed in administrative detention status if warranted by the conditions established above. The Segregation Review Official (SRO) advises the inmate of this determination and the reason for the action via an *Administrative Detention Order* (ADO) (BP-A0308). The Warden or shift supervisor can order immediate segregation.

The decision for post-disciplinary detention must be based on a separate review, not solely on the initial hearing before the DHO that resulted in the inmate's placement in disciplinary segregation.

Except for pretrial inmates or inmates in a control unit program, staff ordinarily, within 90 days of an inmate's placement in post-disciplinary detention, must either return the inmate to the general inmate population or request a transfer of the inmate to a more suitable institution using Form EMS-A409 *Request for Transfer/Application of Management Variable*. The Regional Correctional Programs Administrator will be copied on the completed form.

The institution must generate a regional referral for each inmate in post-disciplinary detention in excess of 90 days that includes case-specific information stating why the inmate is not appropriate for return to general population or immediate transfer. The Regional Director must submit a recommendation for post-disciplinary detention in excess of 90 days and every additional 60 days thereafter to the Assistant Director, Correctional Programs Division (CPD) for concurrence. Distribution includes a copy to the GroupWise mailbox BOP-CPD/DHO~. The institution generates an Administrative Detention Order (ADO) that cites the same case-specific information and includes documentation indicating that the SRO has advised the inmate of the basis for the extended stay.

5. **DISCIPLINARY SEGREGATION STATUS**

**§ 541.24 Disciplinary segregation status.**

**You may be placed in disciplinary segregation status only by the DHO as a**

**Exhibit 3**
**Attach. A, p. 4**

disciplinary sanction.

## 6. NOTICE RECEIVED WHEN PLACED IN THE SHU

### § 541.25  Notice received when placed in the SHU.

**You will be notified of the reason(s) you are placed in the SHU as follows:**

The Lieutenant or other correctional supervisor prepares an Administrative Detention Order (ADO).  A new ADO is required if an inmate's status in administrative detention changes. Distribution of copies is indicated on the ADO.

**(a) *Administrative detention status.*  When placed in administrative detention status, you will receive a copy of the administrative detention order, ordinarily within 24 hours, detailing the reason(s) for your placement.  However, when placed in administrative detention status pending classification or while in holdover status, you will not receive an administrative detention order.**

Pending classification refers to newly arrived inmates.

**(b) *Disciplinary segregation status.*  When you are to be placed in disciplinary segregation status as a sanction for violating Bureau regulations, you will be informed by the DHO at the end of your discipline hearing.**

## 7. REVIEW OF PLACEMENT IN THE SHU

### § 541.26  Review of placement in the SHU.

**Your placement in the SHU will be reviewed by the Segregation Review Official (SRO) as follows:**

**(a) *Three day review.*  Within three work days of your placement in administrative detention status, not counting the day you were admitted, weekends, and holidays, the SRO will review the supporting records.  If you are in disciplinary segregation status, this review will not occur.**

For reviews of Protection Cases see section 9.

**(b) *Seven day reviews.*  Within seven continuous calendar days of your placement in either administrative detention or disciplinary segregation status, the SRO will formally review your status at a hearing you can attend.  Subsequent reviews of your records will be performed in your absence by the SRO every seven continuous calendar days thereafter.**

**Exhibit 3
Attach. A, p. 5**

(c) *Thirty day reviews.* **After every 30 calendar days of continuous placement in either administrative detention or disciplinary segregation status, the SRO will formally review your status at a hearing you can attend.**

(d) *Administrative remedy program.* **You can submit a formal grievance challenging your placement in the SHU through the Administrative Remedy Program, 28 CFR part 542, subpart B.**

28 CFR Part 542, Subpart B, refers to the Program Statement **Administrative Remedy Program.**

The SRO refers to the individual at each Bureau institution assigned to review the status of each inmate housed in disciplinary segregation and administrative detention. The SRO must conduct the required reviews. The SRO does not have to be a DHO. Ordinarily, the SRO is the Captain (may be delegated to a Lieutenant responsible for supervision of the SHU). This review must include:

- A review of the inmate's records while in the SHU *(Special Housing Unit Record* (BP-A0292)).
- All available memoranda from staff (including psychology staff).
- All available investigatory memoranda.
- The SRO completes a *Special Housing Review* form (BP-A0295) after review of the *Special Housing Unit Record* and other relevant documentation. Maintain permanent logs.

8. **PROTECTION CASE – PLACEMENT IN ADMINISTRATIVE DETENTION STATUS**

§ 541.27 **Protection case – placement in Administrative Detention status.**

**You may be placed in administrative detention status as a protection case in the following circumstances.**

(a) *Victim of inmate assault or threats.* **You were the victim of an inmate assault, or are being threatened by other inmates, including threats of harm if you do not act in a certain way, for example, threats of harm unless you engage in sexual activity.**

(b) *Inmate informant.* **Your safety is threatened because you provided, or are perceived as having provided, information to staff or law enforcement authorities regarding other inmates or persons in the community.**

(c) *Inmate refusal to enter general population.* **You refuse to enter the general population because of alleged pressures or threats from unidentified inmates, or**

**Exhibit 3
Attach. A, p. 6**

for no expressed reason.

(d) *Staff concern.* Based on evidence, staff believe your safety may be seriously jeopardized by placement in the general population.

9. PROTECTION CASE – REVIEW OF PLACEMENT IN THE SHU

§ 541.28 Protection case – review of placement in the SHU.

(a) *Staff investigation.* Whenever you are placed in the SHU as a protection case, whether requested by you or staff, an investigation will occur to verify the reasons for your placement.

(b) *Hearing.* You will receive a hearing according to the procedural requirements of § 541.26(b) within seven calendar days of your placement. Additionally, if you feel at any time your placement in the SHU as a protection case is unnecessary, you may request a hearing under this section.

(c) *Periodic review.* If you remain in administrative detention status following such a hearing, you will be periodically reviewed as an ordinary administrative detention case under § 541.26.

When an inmate is placed in administrative detention for protection, the Warden or designee (ordinarily the Captain), must review the placement within two work days of the placement to determine if continued protective custody is necessary. This review includes documents that led to the inmate being placed in protective custody status and any other documents pertinent to the inmate's protection.

10. STAFF VERIFICATION OF NEED FOR PROTECTION

§ 541.29 Staff verification of need for protection.

If a staff investigation verifies your need for placement in the SHU as a protection case, you may remain in the SHU or be transferred to another institution where your status as a protection case may not be necessary, at the Warden's discretion.

11. LACK OF VERIFICATION OF NEED FOR PROTECTION

§ 541.30 Lack of verification of need for protection.

If a staff investigation fails to verify your need for placement in the SHU as a protection case, you will be instructed to return to the general population. If you refuse to return to the general population under these circumstances, you may be

**Exhibit 3**
**Attach. A, p. 7**

**subject to disciplinary action.**

Inmates refusing placement in general population should be maintained in Administrative Detention status and, if appropriate, initiate disciplinary action.

12. **CONDITIONS OF CONFINEMENT IN THE SHU**

**§ 541.31  Conditions of confinement in the SHU.**

**Your living conditions in the SHU will meet or exceed standards for healthy and humane treatment, including, but not limited to, the following specific conditions:**

**(a)** *Environment.* **Your living quarters will be well-ventilated, adequately lighted, appropriately heated, and maintained in a sanitary condition.**

**(b)** *Cell Occupancy.* **Your living quarters will ordinarily house only the amount of occupants for which it is designed.  The Warden, however, may authorize more occupants so long as adequate standards can be maintained.**

**(c)** *Clothing.* **You will receive adequate institution clothing, including footwear, while housed in the SHU.  You will be provided necessary opportunities to exchange clothing and/or have it washed.**

**(d)** *Bedding.* **You will receive a mattress, blankets, a pillow, and linens for sleeping.  You will receive necessary opportunities to exchange linens.**

If the institution issues the combination mattress with a pillow incorporated, a separate pillow will not be issued. Staff may remove an inmate's mattress during non-sleeping daytime hours as a "loss of privilege" sanction imposed by the UDC/DHO.  Removal of an inmate's mattress is otherwise prohibited, absent life or safety concerns as specifically documented and authorized by the Warden, or his or her designee.

**(e)** *Food.* **You will receive nutritionally adequate meals.**

Refer to the Program Statement Food Service Manual for standards and guidelines for feeding inmates in Special Housing Units.

**(f)** *Personal hygiene.* **You will have access to a wash basin and toilet.  You will receive personal items necessary to maintain an acceptable level of personal hygiene, for example, toilet tissue, soap, toothbrush and cleanser, shaving utensils,** *etc.* **You will ordinarily have an opportunity to shower and shave at least three times per week.  You will have access to hair care services as necessary.**

**(g)** *Exercise.* **You will receive the opportunity to exercise outside your individual**

**Exhibit 3**
**Attach. A, p. 8**

**quarters at least five hours per week, ordinarily on different days in one-hour periods. You can be denied these exercise periods for a week at a time by order of the Warden if it is determined that your use of exercise privileges threatens safety, security, and orderly operation of a correctional facility, or public safety.**

If weather and resources permit, the inmate shall receive outdoor exercise periods. "Week" means one calendar week.

Restriction or denial of exercise is not used as punishment. The Warden or Acting Warden may not delegate the authority to restrict or deny exercise. Exercise periods are only restricted or denied when the inmate's activities pose a threat to the safety, security and orderly operation of a correctional facility, or health conditions of the unit.

The appropriate staff member recommends recreation restrictions to a supervisor who then makes the recommendation to the Warden in writing. The recommending staff member describes briefly the reason for recommending a restriction and its proposed extent. The Warden reviews the recommendation and approves, modifies, or denies the restriction. If the Warden approves a restriction, it must be based on the conclusion that the inmate's actions pose a threat to the safety, security, and orderly operation of a correctional facility or health conditions of the unit.

**(h)** *Personal property.* **In either status, your amount of personal property may be limited for reasons of fire safety or sanitation.**

**(1) In administrative detention status you are ordinarily allowed a reasonable amount of personal property and reasonable access to the commissary.**

**(2) In disciplinary segregation status your personal property will be impounded, with the exception of limited reading/writing materials, and religious articles. Also, your commissary privileges may be limited.**

(3) Personal property ordinarily allowed in administrative detention (if not otherwise a threat to institution security) includes:

- Bible, Koran, or other scriptures (1)
- Books, paperback (5)
- Eyeglasses, prescription (2)
- Legal material (see policy on inmate legal activities)
- Magazine (3)
- Mail (10)
- Newspaper (1)
- Personal hygiene items (1 of each type) (no dental floss or razors*)
- Photo album (25 photos)
- Authorized religious medals/headgear (e.g., kufi)

**Exhibit 3
Attach. A, p. 9**

- Shoes, shower (1)
- Shoes, other (1)
- Snack foods without aluminum foil wrappers (5 individual packs)
- Soft drinks, powdered (1 container)
- Stationery/stamps (20 each)
- Wedding band (1)
- Radio with ear plugs (1)
- Watch (1)

*Razors are controlled by SHU staff.  Only disposable razors are used.

The Warden may modify the quantity and type of personal property allowed.  Personal property may be limited or withheld for reasons of security, fire safety, or housekeeping.

Unauthorized use of any authorized item may result in the restriction of the item.  If there are numerous misuses of an authorized item, the Warden may determine that the item will not be issued in the SHU.

**Reading Material.** You will receive a reasonable amount of non-legal reading material, not to exceed five books per inmate at any one time, on a circulating basis.  Staff shall provide the inmate the opportunity to possess religious scriptures of the inmate's faith.

**(i)  *Correspondence*.  You will receive correspondence privileges according to part 540, subpart B.**

Part 540, Subpart B, refers to the Program Statement **Correspondence.**

**(j)  *Telephone*.  You will receive telephone privileges according to part 540, subpart I.**

Part 540, Subpart I, refers to the Program Statement **Inmate Telephone Regulations.**

If the inmate has not been restricted from telephone use as the result of a specific disciplinary sanction, he/she is allowed to make one telephone call per month.  Meaning, the inmate should receive a phone call within the first 30 calendar days of placement in the Special Housing Unit and within every 30 calendar days thereafter.

**(k)  *Visiting*.  You will receive visiting privileges according to part 540, subpart D.**

Part 540, Subpart D, refers to the Program Statement **Visiting Regulations.**

**(l)  *Legal activities*.  You will receive an opportunity to perform personal legal activities according to part 543, subpart B.**

Part 543, Subpart B, refers to the Program Statement **Inmate Legal Activities.**

**Exhibit 3**
**Attach. A, p. 10**

**(m)** *Staff monitoring.* **You will be monitored by staff assigned to the SHU, including program and unit team staff.**

Program staff, including unit staff, arrange to visit inmates in a SHU within a reasonable time after receiving the inmate's request.

In addition to direct supervision by the unit officer, qualified health personnel and one or more responsible officers the Warden designates (ordinarily the Institution Duty Officer) visit each segregated inmate daily, including weekends and holidays. A Lieutenant must visit the SHU during each shift to ensure all procedures are followed.

Duress buttons, if present, will be utilized only for emergency and/or life threatening situations, to include health related issues. The use of the duress button for anything other than an emergency and/or life threatening situation is subject to disciplinary action.

**(n)** *Programming activities.* **In administrative detention status, you will have access to programming activities to the extent safety, security, orderly operation of a correctional facility, or public safety are not jeopardized. In disciplinary segregation status, your participation in programming activities,** *e.g.,* **educational programs, may be suspended.**

**(o)** *Administrative Remedy Program.* **You can submit a formal grievance challenging any aspect of your confinement in the SHU through the Administrative Remedy Program, 28 CFR part 542, subpart B.**

28 CFR Part 542, Subpart B, refers to the Program Statement **Administrative Remedy Program.**

13. **MEDICAL AND MENTAL HEALTH CARE IN THE SHU**

**§ 541.32  Medical and mental health care in the SHU.**

**(a)** *Medical care.* **A health services staff member will visit you daily to provide necessary medical care. Emergency medical care is always available.**

While in a SHU, inmates may continue taking their prescribed medications.

**(b)** *Mental health care.* **After every 30 calendar days of continuous placement in either administrative detention or disciplinary segregation status, mental health staff will examine you, including a personal interview. Emergency mental health care is always available.**

**Exhibit 3**
**Attach. A, p. 11**

Staff conduct a psychiatric or psychological assessment, including a personal interview, when administrative detention continues beyond 30 days. The assessment, submitted to the SRO in a written report with a copy to the inmate's central file, addresses:

- The inmate's adjustment to surroundings.
- The threat the inmate poses to self, staff, and other inmates.

Staff conduct a similar psychiatric or psychological assessment and report at 30 day intervals should detention continue for an extended period.

## 14. RELEASE FROM THE SHU

**§ 541.33  Release from the SHU.**

**(a) *Administrative detention status.* You will be released from administrative detention status when the reasons for your placement no longer exist.**

**(b) *Disciplinary segregation status.* You will be released from disciplinary segregation status after satisfying the sanction imposed by the DHO. The SRO may release you earlier if it is determined you no longer require disciplinary segregation status.**

The SRO may not increase any previously imposed sanction(s). When considering release from disciplinary segregation, the SRO first consults with the Captain and must notify the DHO of the inmate's release from disciplinary segregation before satisfying the imposed sanction.

## 15. AGENCY'S ACA ACCREDITATION PROVISIONS

*ACA Standards*
- 4th Edition Standards for Adult Correctional Institutions: 4-4133, 4-4235, 4-4249, 4-4250, 4-4251, 4-4252, 4-4253, 4-4254, 4-4255, 4-4256, 4-4258, 4-4260, 4-4261, 4-4262, 4-4263, 4-4264, 4-4265, 4-4266, 4-4267, 4-4268, 4-4269, 4-4270, 4-4271, 4-4272, and 4-4273.
- 4th Edition Performance-Based Standards for Adult Local Detention Facilities: 4-ALDF-2A-44, 4-ALDF-2A-45, 4-ALDF-2A-46, 4-ALDF-2A-47, 4-ALDF-2A-48, 4-ALDF-2A-49, 4-ALDF-2A-50, 4-ALDF-2A-51, 4-ALDF-2A-53, 4-ALDF-2A-55, 4-ALDF-2A-56, 4-ALDF-2A-57, 4-ALDF-2A-58, 4-ALDF-2A-59, 4-ALDF-2A-60, 4-ALDF-2A-61, 4-ALDF-2A-62, 4-ALDF-2A-63, 4-ALDF-2A-64, 4-ALDF-2A-65, and 4-ALDF-2A-66.

## REFERENCES

*Program Statements*
P1315.07     Inmate Legal Activities (11/5/99)
P1330.16     Administrative Remedy Program (12/31/07)

**Exhibit 3**
**Attach. A, p. 12**

| | |
|---|---|
| P4700.05 | Food Service Manual (6/12/2006) |
| P5100.08 | Inmate Security Designation and Custody Classification (9/12/06) |
| P5212.07 | Control Unit Programs (2/20/01) |
| P5264.08 | Inmate Telephone Regulations (1/24/08) |
| P5265.14 | Correspondence (4/5/11) |
| P5267.08 | Visiting Regulations (5/11/06) |
| P5270.09 | Inmate Discipline (7/8/11) |
| P6031.01 | Patient Care (1/15/05) |
| P6340.04 | Psychiatric Services (1/15/05) |
| P6360.01 | Pharmacy Services (1/15/05) |

*Records Retention Requirements*
Requirements and retention guidance for records and information applicable to this program are available in the Records and Information Disposition Schedule (RIDS) on Sallyport.

P5270.10   7/29/2011   **Federal Regulations are shown in this type.**   Implementing instructions: this type.    13

**Exhibit 3**
**Attach. A, p. 13**

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRANDEN M. LABARGE,** | : | **NO. 1:16-CV-1046** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Judge Jones)** |
| | : | |
| **C. MAIORANA, Warden, et al.,** | : | |
| **Defendants** | : | **Filed Electronically** |

## CERTIFICATE OF SERVICE BY MAIL

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.  That on November 21, 2016, she served a copy of the attached

## EXHIBITS IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Williamsport, Pennsylvania.

Branden M. Labarge
Reg. No. 09683-029
USP Lee
P.O. Box 305
Jonesville, VA   24263

s/ Michele E. Lincalis
Michele E. Lincalis
Supv. Paralegal Specialist