IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRANDEN M. LABARGE,          :
               Plaintiff,          :          1:16-cv-1046
                          :
     v.          :          Hon. John E. Jones III
                          :
WARDEN C. MAIORANA, *et al.*,          :
               Defendants          :

## MEMORANDUM

## September 18, 2017

Plaintiff Branden M. Labarge ("Labarge"), a federal inmate who, at all times

relevant, was incarcerated at the United States Penitentiary at Canaan (USP-

Canaan) Waymart, Pennsylvania, filed a *Bivens*[1] and Federal Tort Claims Act

("FTCA")[2] complaint on June 1, 2016. (Doc. 1). Therein, Labarge sets forth

Eighth Amendment claims of failure to protect, excessive use of force, and denial

of recreation, and First Amendment claims of retaliation for exercise of free speech

and denial of writing utensils for purposes of accessing family, friends, the media

---

[1]*Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978).

[2]The FTCA, 28 U.S.C. § 2679(b)(1), provides that a suit against the United States is the exclusive remedy for persons seeking recovery for common law torts committed by federal employees within the scope of their federal employment. *See also* 28 U.S.C. §1346(b)(governing jurisdiction). Because the FTCA is a limited waiver of sovereign immunity which extends to the United States, but not to its agencies and employees, the United States is the only appropriate defendant.

and the courts. (*Id.* at pp. 16-20). The FTCA portion of the complaint includes claims of negligence, assault and battery, and intentional infliction of emotional distress. (*Id.* at 21-24)

Pending before the Court is Defendants' motion (Doc. 22) to dismiss pursuant to Federal Rule of Civil Procedure 12(b), and for summary judgment pursuant to Federal Rule of Civil Procedure 56(a), filed on September 29, 2016. A brief (Doc. 43) in support of the motion and statement of material facts (Doc. 44) were filed on November 21, 2016. On December 12, 2016, Labarge filed a motion (Doc. 47) for extension of time to respond to the Defendants' motion. The Court granted the motion and afforded him until February 17, 2017, to file an opposition brief and to respond to the statement of material facts. (Doc. 48). Labarge was cautioned that his failure to file an opposition brief and statement of material facts would render the motion unopposed and would result in an admission to the Defendants' statement of material facts. (*Id.*) He has neither opposed the motion nor sought an enlargement of time in which to do so. The motion is therefore deemed unopposed. For the reasons set forth below, the motion to dismiss will be granted with respect to the FTCA claims and the motion for summary judgment will be granted as to the *Bivens* claims.

# I.    FTCA Claims

## A.    Rule 12(b)(1) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a complaint for "lack of subject-matter jurisdiction." FED. R. CIV. P. 12(b)(1).  A motion to dismiss under Rule 12(b) (1) therefore challenges the power of a federal court to hear a claim or case.  *See Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006).  In the face of a 12(b)(1) motion, the plaintiff has the burden to "convince the court it has jurisdiction."  *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000); *see also Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) (stating that "[w]hen subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion.").

Through the FTCA, Congress has waived sovereign immunity for actions sounding in tort against the United States and its agencies, *Pascale v. United States*, 998 F.2d 186, 189 (3d Cir. 1993), thereby allowing tort claims against the United States for the acts of its employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b).  The FTCA requires a claimant, in any action against the United States for money damages due to the negligence or wrongful act of a government employee, to file a

claim with the agency allegedly responsible for his injuries. *See* 28 U.S.C. §

2675(a). The agency may then pay the claim in full, offer to settle the claim, or

deny the claim within six months. 28 U.S.C. §§ 2672, 2675(a). If the agency

denies the claim or does not make a final disposition within six months, the

claimant may then file suit in federal court. 28 U.S.C. § 2675(a). A tort claim

against the United States, however, "shall be forever barred unless it is presented in

writing to the appropriate Federal agency within two years after such claim accrues

or unless action is begun within six months after the date of mailing, by certified or

registered mail, of notice of final denial of the claim by the agency to which it was

presented." 28 U.S.C. § 2401(b). Compliance with the statute of limitations is a

jurisdictional requirement. *See Roma v. United States*, 344 F.3d 352, 362 (3d

Cir.2003); Pascale, 998 F.2d 186 (3d Cir.1993). Additionally, the statute of

limitations is strictly construed. *See Barren v. United States*, 839 F.2d 987, 992 (3d

Cir. 1988). Thus, a plaintiff's failure to sue within the period of limitations

recognized by § 2401(b) deprives a court of subject matter jurisdiction. *Ahmed v.*

*United States*, 30 F.3d 514 (4th Cir. 1994).

According to a search of the BOP database system, Labarge filed only one

administrative tort claim, TRT-NERO-2015-04861, and it concerns an allegation

of insufficient recreation while housed in the SHU at USP Canaan. (Doc. 44, ¶ 77).

The Northeast Regional Office denied the claim on December 23, 2015. (*Id.* at 78). The database search indicated that Labarge failed to administratively exhaust any other issues referenced in his complaint and filed under the Federal Tort Claims Act. (*Id.* at 79).

It is undisputed that Labarge failed to file an administrative tort claim with regard to the negligence, assault and battery, and intentional infliction of emotional distress claims as required by 28 U.S.C. § 2675(a). We therefore lack subject matter jurisdiction over these claims.

## B. Rule 12(b)(6) Motion to Dismiss

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. *Innis v. Wilson*, 334 F. App'x 454, 456 (3d Cir. 2009) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008)). A district court ruling on a motion to dismiss generally

"relies on the complaint, attached exhibits, and matters of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "First, the factual and legal elements of a claim should be separated." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Second, the court must then determine whether the complaint states a plausible claim for relief, which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 211 (citing *Iqbal*, 556 U.S. at 679); see also 28 U.S.C. § 1915A(b) (directing the court to identify cognizable claims and to dismiss any portion of the complaint that fails to state a claim). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679; FED. R. CIV. P. 8(a)(2).

The FTCA waiver of sovereign immunity is subject to several requirements and limitations. *CNA v. United States*, 535 F.3d 132, 138 (3d Cir. 2008). One of these limitations is found in § 1346(b)(2), which provides:

> No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

28 U.S.C. §1346(b)(2).  This section requires a showing of less-than significant-but-more-than-*de minimis* physical injury as a predicate to allowing the successful pleading of an emotional injury.  *Mitchell v. Horn*, 318 F.3d 523, 536 (3d Cir. 2003).

Labarge alleges that between the dates of March 25, 2015, and April 12, 2015, he was not permitted to go to recreation on at least six occasions.  (Doc. 1, ¶¶ 83, 86-87).  He contends that the denial of recreation "resulted in pain and suffering for the plaintiff, exacerbating chronic conditions and becoming a de facto injury." (Doc. 1, ¶ 131).  In its motion to dismiss, the United States argues that, in seeking compensation for pain and suffering, Labarge is attempting to advance a claim for mental or emotional injury without alleging prior physical injury as required by 28 U.S.C. §1346(b)(2).  (Doc. 43, pp. 51, 52).  Labarge does not oppose the motion.  The FTCA claim related to negligent denial of recreation will therefore be dismissed.

## II.    *Bivens* Claims

### A.    Rule 56 Motion for Summary Judgment

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.*; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Wooler v. Citizens Bank*, 274 F. App'x. 177, 179 (3d Cir. 2008). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" *Picozzi v. Haulderman*, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the

movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

**B.     Statement of Material Facts**

"A motion for summary judgment filed pursuant to FED. R. CIV. P. 56 shall be accompanied by a separate, short and concise statement of the material facts . . . as to which the moving party contends there is no genuine issue to be tried." *See* L.R. 56.1.  The opposing party shall file a separate statement of the material facts as to which it is contended that there exists a genuine issue to be tried.  *Id.*  "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."  *Id.*  Because Labarge failed to oppose Defendants' statement of material facts, all facts contained therein are deemed admitted.

On March 21, 2015, while being escorted by Senior Officer J. Getz ("Getz") to the SHU, Labarge stopped and refused to continue walking to his assigned cell. (Doc. 44, ¶¶ 6, 14).  Getz gave Labarge direct orders to proceed to his assigned cell and, in response, Labarge turned his head and told Officer Getz that he was "gonna f*** [Getz] up if [Getz] tr[ied] to put him in the cell!"  (*Id.* at 7, 8, 14).  Getz gave Labarge a direct order to not turn his head and to stop resisting escort; Labarge turned in an aggressive manner and attempted to break free from Getz.  (*Id.* at ¶ 9,

10). Getz took Labarge to the ground. (*Id.* at 11). Staff placed him in leg restraints and escorted him to a holding cell where he was searched and photographed. (*Id.*at 11-14). Staff then removed him from the holding cell directly to the medical department. (*Id.*)

During the March 21, 2015, medical examination, Labarge denied any blurred vision, nausea, vomiting, and/or shortness of breath. (*Id.* at 17, 20). He spoke in full sentences and appeared alert and oriented to his surroundings. (*Id.* at 21, 22). He described moderate pain in his head and was found to have a "small l/2 cm shallow cut" on the center of his chin, which staff cleaned and dressed. (*Id.* at 19, 23). Medical staff also noted an "old trauma to left orbital area, mild swelling, bruising purple" which was several days old and unrelated to the events of March 21, 2015. (*Id.* at 20). No additional injuries to his hands or fingers or otherwise were noted by the treating nurse. (*Id.* at 24, 25). He received no follow-up care after the March 21, 2015, encounter. (*Id.* at 27). Nor did he submit any sick call requests. (*Id.*)

BOP Program Statement 5566.06, "authorizes staff to use force only as a last alternative after all other reasonable efforts to resolve a situation have failed. When authorized, staff must use only that amount of force necessary to gain control of the inmate, to protect and ensure the safety of inmates, staff and others, to prevent

serious property damage, and to ensure institution security and good order." (Doc. 44-1, p. 57 (quoting 28 C.F.R. § 552.20). "Staff may immediately use force and/or apply restraints when the behavior described in [28 C.F.R.] § 552.20 constitutes an immediate, serious threat to the inmate, staff, others, property, or to institution security and good order." (*Id.* at 59). "In an immediate use of force situation, staff may respond with or without the presence or direction of a supervisor." (*Id.* at 60). "[S]taff must use common sense and good correctional judgment in each incident to determine whether the situation allows for the implementation of calculated or immediate use of force procedures." (*Id.*) "Staff shall use only that amount of force necessary to gain control of the inmate." (*Id.* at 63). "Situations when an appropriate amount of force may be warranted include, but are not limited to: (1) Defense or protection of self or others; (2) Enforcement of institutional regulations; and (3) The prevention of a crime or apprehension of one who has committed a crime." (*Id.*) "In immediate use of force situations, staff shall seek the assistance of mental health or qualified health personnel upon gaining physical control of the inmate." (Doc. 44-2, p. 4). "Following any incident involving the use of force (calculated or immediate) and the application of restraints, the Warden, Associate Warden (responsible for Correctional Services), Health Services Administrator, and Captain must meet and review the incident . . . to assess the rationale of the

actions taken (e.g., if the force was appropriate and in proportion to the inmate's actions)." (*Id.* at 8).

Immediately following the incident, Lieutenant Galella conducted a debriefing video describing the immediate use of force on Labarge and detailing the medical treatment administered. (*Id.* at 13-17). A contemporaneous after action review report submitted by Warden Maiorana determined that the actions of staff were reasonable and appropriate. (*Id.* at 26; Doc. 44-1, pp. 43-54).

Following the incident, Getz issued to Labarge incident report number 2696005 for threatening another with bodily harm and refusing to work or accept a program assignment. (*Id.* at 34; Doc. 44-2, p. 13). On April 2, 2015, a Discipline Hearing Officer (DHO) found Labarge guilty of threatening another with bodily harm and refusing to obey an order. (*Id.* at 36; Doc. 44-1, pp. 39-42). The DHO sanctioned Labarge with 27 days of good conduct time for the charge of threatening another with bodily harm and 3 days of good conduct time for refusing to obey an order. (*Id.*at 37; *Id.* at 42)

The BOP transferred Labarge to the United States Penitentiary at McCreary, Pink Knot, Kentucky, on May 20, 2015. (*Id.* at 29). He made no complaints of a broken finger or any other symptomatic conditions during his health screening. (*Id.*) On October 14, 2015, Labarge complained about an injury to his right finger

during an examination, which he indicated he received as a result of the March 21, 2015 incident.  (*Id.* at 30).  X-rays did not show any fractures.  (*Id.* at 32).   The examining doctor noted that, "[t]here may be early arthritis setting in the area." (*Id.* at 33).

On July 28, 2016, Michael FiggsGanter, Attorney Advisor employed by the BOP, conducted a search of BOP records to determine whether Labarge exhausted available administrative remedies regarding the *Bivens* claims.  (Doc. 44-1, ¶ 1). The BOP's records provide details concerning each remedy filed by an inmate, including the administrative remedy number, the date the remedy was received, an abstract of the issue(s) raised, the event facility, the date it was responded to, and the current status of the remedy, using codes to indicate the reason why a particular remedy has been rejected.  (Doc. 44, ¶ 70).  As of July 28, 2016, Labarge had filed a total of twenty-six administrative remedies during his incarceration. (*Id.* at 71).

According to FiggsGanter, "[w]hile inmate Labarge has successfully exhausted the available administrative remedy process related to [the] March 21, 2015 [excessive force] incident [in Administrative Remedy No. 817458], a review reveals that he failed to exhaust any additional constitutional claims prior to filing his current lawsuit."  (Doc. 44-1, ¶ 19).

The Federal Bureau of Prison's ("BOP") Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for review of an issue which relates to any aspect of their confinement. (Doc. 44, ¶ 60, citing 28 C.F.R. § 542.10 *et seq*.).  An inmate must initially attempt to informally resolve the issue with institutional staff by completing a BP-8 form.  (*Id*. at 61, citing 28 C.F.R. § 542.13(a)).  If informal resolution fails an inmate may submit a request *via* a BP-9 form to the Warden within 20 days of the date on which the basis for the request occurred.  (*Id.* at 62, 63, citing 28 C.F.R. § 542.14).  An inmate who is dissatisfied with the Warden's response may submit an appeal using a BP-10 form to the Regional Director of the BOP within 20 days of the date the Warden signed the response. (*Id.* at 64, citing 28 C.F.R. § 542.15(a)).  If the Regional Director denies the appeal, the inmate may then appeal to the BOP's Central Office using a BP-11 form within 30 days of the denial.  (*Id.* at 65).  If an inmate "does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." (*Id.* at 67, citing 28 C.F.R. § 542.18).  If a remedy is rejected, it is returned to the inmate and the inmate is provided with a written notice explaining the reason for the rejection.  (*Id.* at 68, citing 28 C.F.R. § 542.17(a), (b)).

On April 23, 2015, Labarge filed administrative remedy number 819373-F1 at the institution level concerning a "complaint about staff."  (*Id.* at 73(a)).  It was

"closed" on May 18, 2015, with an "explanation." (*Id.*at 73(b)). On June 19, 2015, he appealed to the Regional Office. (*Id.* at 73(c)). The Regional Office rejected the appeal on June 23, 2015, because the appeal did not concern a "sensitive" issue. (*Id.* at 73(d)). On July 15, 2015, he filed with the Central Office. (*Id.* at 73(e)). The Central Office rejected the appeal on July, 30, 2015, informing him that he "must first file at the institution." (*Id.* at 73(f)).

On June 16, 2015, he filed administrative remedy number 825855-F1 at the institution level concerning "complaints with cellie in SHU; staff complaints." (*Id.* at 74(a)). The Warden rejected it on June 24, 2015, as untimely. (*Id.* at 74(b)). On July 13, 2015, he filed pursued the remedy with the Regional Office citing "complaints with cellie in SHU; staff complaints." (*Id.* at 74(c)). On July 29, 2015, he again filed 825855-A1 at the institution level concerning "complaints with cellie in SHU; staff complaints." (*Id.* at 74(e)). It was rejected on August 18, 2015, with rejection code "WRL," indicating that it was filed at the wrong level. (*Id.* at 74(f); Doc. 44-1, p. 24, 28). The Regional Office rejected remedy 825855-R1 on July 30, 2015, with a remark stating, "need to supply a response from the warden before your appeal can be accepted for review." (*Id.* at 74(d)).

On June 16, 2015, Labarge filed administrative remedy number 825865-F1 at the institution level concerning "complaints with no rec while in SHU at USP

Canaan," which was rejected on June 24, 2015, for being untimely. (Id. at 75(a),

(b)).  On July 13, 2015, he appealed to the Regional Office; the appeal was rejected

on July 15, 2015, with the remark, "need to supply a response from the warden

before your appeal can be accepted for review."  (*Id.* at 75(c), (d)).  On July 29,

2015, he filed with the Central Office, which rejected the appeal on August 7,

2015, because it was filed at the wrong level. (*Id.* at 75(e), (f)).

## C.     Discussion

A *Bivens* action is "the federal equivalent of the § 1983 cause of action

against state actors." *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir.2001);

*see also Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995) (per curiam) (noting that

"federal courts have typically incorporated § 1983 law into Bivens actions"

because "the two actions share the same practicalities of litigation.").  Section 1983

offers private citizens a cause of action for violations of federal law by state

officials.  *See* 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of
> Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress. . . .

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). Accordingly, to establish a claim for relief under *Bivens*, a plaintiff must demonstrate: (1) that the conduct was committed by a federal actor, and (2) that conduct resulted in the deprivation of a right secured by the Constitution or federal laws of the United States. *See Brown*, 250 F.3d at 801.

### 1.   Administrative Exhaustion

Defendants seek an entry of summary judgment on the grounds that Labarge failed to fully exhaust his administrative remedies with respect to the Eighth Amendment failure to protect and denial of recreation claims and his First Amendment claims retaliation and exercise of free speech and denial of writing utensils for purposes of accessing family, friends, the media and the courts, as required by 42 U.S.C. § 1997e(a). The Prison Litigation Reform Act of 1996 (the "PLRA") "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016); *see Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."). The text "suggests no limits on an inmate's obligation to exhaust–

irrespective of 'special circumstances.'" *Id.* "And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account. *See Miller v. French*, 530 U.S. 327, 337, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (explaining that "[t]he mandatory 'shall' ... normally creates an obligation impervious to judicial discretion")." *Id.* at 1856-57.

Significantly, "the PLRA contains its own, textual exception to mandatory exhaustion," *i.e.* the PLRA requires exhaustion of "available" administrative remedies. *Id.* at 1858. "Available" is defined as "capable of use for the accomplishment of a purpose" and that which "is accessible or may be obtained." *Id*. at 1858-59, (quoting *Booth v. Churner*, 532 U.S. 731, 737-38 (2001)). There are three instances in which administrative remedies are unavailable. "First, as Booth made clear, an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end– with officers unable or consistently unwilling to provide relief to aggrieved inmates." *Id.* at 1859. "Next an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjunctive system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.' " *Id.* at 93 (quoting *Porter v. Nussle*, 534 U.S. 516, 525 (2002)). The requirement may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal." *Woodford*, 548 U.S. at 83; *see also Spruill v. Gillis*, 372 F.3d 218, 228–29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 211–212 (2007).

Finally, whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination

requires the resolution of disputed facts. *See Small v. Camden County*, 728 F.3d. 265, 268 (3d Cir. 2013); *see also Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010).

The PLRA requires Labarge to pursue administrative relief with regard to his *Bivens* claims prior to filing suit in federal court. Although he clearly exhausted his administrative remedies with regard to his excessive use of force claim, Defendants have established *via* the affidavit of FiggsGanter and the attendant BOP records that he failed to properly and fully administratively exhaust all other *Bivens* claims. Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Labarge has failed to dispute Defendants' exhaustion argument. As such, Defendants are entitled to an entry of summary judgment on the Eighth Amendment failure to protect and denial of recreation claims and the First Amendment claims retaliation and exercise of free speech and denial of writing utensils for purposes of accessing family, friends, the media and the courts.

### 2. Merits of Excessive Use of Force Claim

The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of

decency.  *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  "In an excessive force claim, the central question is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986).  The Court looks to the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, the extent of the threat to the safety of prison staff and inmates—as reasonably perceived by prison officials on the facts known to them, and any efforts made to temper the severity of a forceful response.  *Brooks*, 204 F.3d at 106.

Defendants Maiorana, Collis, Galella, and Grizzanti, argue that their lack of personal involvement in the application of the use of force entitles them to an entry of summary judgment.  Individual liability will be imposed in a civil rights action only if the state actor played an "affirmative part" in the alleged misconduct.  *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).  Liability "cannot be predicated solely on the operation of *respondeat superior*."  *Id.*  In other words, defendants in civil rights actions "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge

22

and acquiescence." *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003); *Rode*, 845 F.2d at 1207-08. When a plaintiff merely hypothesizes that an individual defendant may have had knowledge of or personal involvement in the deprivation of his or her rights, individual liability will not follow. *Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08. It is undisputed that Maiorana, Collis, Galella, and Grizzanti were not present during the incident. Rather, their involvement, if any, was limited to compiling after-the-fact information concerning the incident and assessing the appropriateness of the force applied by Getz. As such, these Defendants are entitled to an entry of summary judgment.

With respect to Defendant Getz, we consider the need for the application of force, the relationship between the need and the appropriateness of the amount of force he utilized, the extent of the injury inflicted on Labarge, and the extent of the threat to the safety of prison staff and inmates, as reasonably perceived by Getz. It is undisputed that Labarge directly disobeyed a direct order and then acted aggressively towards Getz. In a measured response to Labarge's behavior, Getz took Labarge to the ground to gain control of him. Staff placed Labarge in leg restraints, escorted him to a nearby cell and searched him without further incident or disruption to the safety of staff or the security of the cell block. This was followed by an immediate medical evaluation which revealed that Labarge

complained of mild head pain and only sustained a minor cut to his chin.  Given

these circumstances, we find that a reasonable jury could only conclude that

Defendant Getz applied force in a good-faith effort to maintain or restore discipline

and not maliciously and sadistically for the very purpose of causing Labarge harm.

Defendant Getz is therefore entitled to an entry of summary judgment.

**III.**     **Conclusion**

Based on the foregoing, the motion (Doc. 22) to dismiss is granted with

respect to the FTCA claims, and the motion for summary judgment is granted as to

the *Bivens* claims**.**

An appropriate Order will issue.